# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1251

_____

| | | |
|---|---|---|
| Mitchell C. Green, an individual, and on behalf of himself and all others similarly situated as a private attorney general, | * * * * * | |
| Appellee, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Nebraska. |
| Ameritrade, Inc., a Nebraska Corporation; Ameritrade Holding, Corp., a Delaware Corporation, | * * * * | |
| Appellants. | * | |

_____

Submitted: October 15, 2001
Filed: February 1, 2002

_____

Before BOWMAN, BRIGHT, and HANSEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Ameritrade, Inc., and Ameritrade Holding Corp.[1] appeal from the District Court's[2] order remanding Mitchell Green's amended complaint for breach of contract to the district court of Douglas County, Nebraska. Ameritrade removed Green's original complaint to federal court pursuant to the complete preemption provision of the Securities Litigation Uniform Standards Act of 1998 (SLUSA), Pub. L. No. 105-353, 112 Stat. 3227 (codified at 15 U.S.C. § 78bb(f) (Supp. V 1999)). Green then amended his complaint and the District Court determined that SLUSA no longer applies to the claim pleaded in Green's amended complaint. In the absence of mandatory federal jurisdiction under SLUSA, the District Court exercised its discretion to refuse supplemental jurisdiction over Green's state-law claim. Ameritrade appeals, and we affirm.

I.

Ameritrade provides online securities price information and stock brokerage services. In addition to providing stock price information related to individual online trades, Ameritrade offers its customers, for a twenty dollar monthly fee, its real-time quote service. This service allows a paid subscriber to receive "real time, last sales information [for] up to thirty five [sic] (35) stock or option symbols at a time with the same one click of the mouse or hit of the enter button." Class Action Petition ¶ 10. "Real time, last sales information" describes the delivery to Ameritrade subscribers of a composite of the most recent price paid for a stock or option.

Mitchell Green subscribed to Ameritrade's real-time quote service in February 1998. In March 2000, Green sued Ameritrade in the Douglas County, Nebraska, district court. Green sought to bring the suit as a class action on behalf of "[a]ll

[1]We refer to both appellants collectively as Ameritrade.

[2]The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

persons classified as Nonprofessional subscribers who have paid $20 per month for real time 'last sales information' with defendants Ameritrade, Inc. and Ameritrade Holding Corp. to obtain last sales information or real time market quotes for stocks or options." Class Action Petition ¶ 3.[3] Green alleged in his complaint that Ameritrade did "not provide its real time quote subscribers with actual real time, last sales information with respect to 'option' quotes." Class Action Petition ¶ 12. Green asserted that the actual quotes provided lagged "up to hours behind the actual last sale of a particular option on any and all exchanges." Id. He further alleged that Ameritrade led subscribers to believe that the option quotes were obtained from all option exchanges and market makers, though in fact they were not so obtained. Finally, and significantly, Green's complaint alleged that real-time quote service subscribers "are making investment decisions to purchase or sell options based upon stale last sale information." Id. Upon these facts, Green brought state-law claims for breach of contract, fraud by intentional misrepresentation, fraud by negligent representation, deceptive trade practices, and violation of the Nebraska Consumer Protection Act.

Ameritrade timely removed Green's suit to federal district court and moved to dismiss Green's complaint as preempted by SLUSA. In reply to Ameritrade's motion to dismiss, Green moved to remand the action to state court. Relying on Green's allegation that subscribers made "investment decisions to purchase or sell options based upon stale last sale information," the District Court concluded that Green's "case deal[t] with the purchase or sale of securities" and Green's complaint was therefore preempted by SLUSA. The District Court denied, however, Ameritrade's motion to dismiss, and gave Green thirty days to file an amended complaint.

Green subsequently filed an amended complaint, purporting to state a single claim for breach of contract under Nebraska law. The factual allegations of Green's

---

[3]This action has not yet been certified as a class action.

amended complaint differed from his initial complaint in two significant ways. First, instead of alleging that Ameritrade falsely represented that its real-time quote service provided stock and option last-sale information from all stock exchanges and market makers, Green alleged that Ameritrade promised in the "Real-Time Quote Agreement" that it would provide that information to subscribers, including Green, but failed to do so. Second, Green removed all references to any investment decisions to purchase or sell made by subscribers in reliance on this allegedly faulty information. Green's amended complaint alleges only that Ameritrade's contract said it would provide a certain kind of price information, Ameritrade did not in fact provide that information, and Ameritrade therefore breached its subscriber agreement.

Ameritrade moved to dismiss Green's amended complaint on the ground that it too is preempted by SLUSA. Green responded and moved to remand the amended complaint to state court pursuant to 28 U.S.C. § 1447(c) (1994 & Supp. IV 1998) for lack of subject matter jurisdiction. The District Court determined that the amended complaint did not allege that Ameritrade misrepresented or omitted a material fact or used a manipulative or deceptive device or contrivance. The court concluded that SLUSA therefore did not cover the substance of Green's suit. The court also concluded that even though Green's amended complaint dropped all federal claims, the remaining claim was still subject to the court's supplemental jurisdiction if the court chose to invoke it. Exercising its discretion, the court chose to remand the case to the state court. See 28 U.S.C. § 1367(c) (1994).

## II.

Although the parties have not raised any question about our power to hear this appeal, we must in the first instance satisfy ourselves that we have jurisdiction to review the District Court's remand order. Although as a general rule 28 U.S.C. § 1447(d) "prohibits appellate review of an order remanding a case to state court," In re Atlas Van Lines, Inc., 209 F.3d 1064, 1066 (8th Cir. 2000), there are exceptions.

-4-

Where, as here, the District Court's remand order is based on its authority under 28 U.S.C. § 1367(c), the prohibition of review on appeal found in § 1447(d) does not apply. See Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127 (1995) ("[O]nly remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)."). The District Court had federal question jurisdiction over the complaint removed from state court by Ameritrade because it was SLUSA-preempted. See Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) (explaining basis for federal court jurisdiction where complete preemption exists). Green's amended complaint alleges a state-law claim for breach of contract that was pleaded as part of the larger original complaint. After Green's amendment of his complaint, the District Court still had supplemental jurisdiction over this state-law claim and therefore appropriately considered whether to exercise its discretion to retain the claim in federal court under § 1367. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 346, 348-49, 353-54 (1988); St. John v. Int'l Ass'n of Machinists & Aero. Workers, 139 F.3d 1214, 1217 (8th Cir. 1998); Petkus v. Chicago Rawhide Mfg. Co., 763 F. Supp. 357, 360-61 (N.D. Ill. 1991). We therefore are not barred by § 1447 from reviewing the District Court's remand order, and we have jurisdiction to consider the merits of Ameritrade's appeal. St. John, 139 F.3d at 1216-17.

## III.

Our review of the case law has revealed only one case in which this Court has had the opportunity to examine SLUSA's provisions, see In re BankAmerica Corp. Sec. Litig., 263 F.3d 795 (8th Cir. 2001) (upholding injunction staying state-court proceedings because injunction fell within exception to Anti-Injunction Act), but our discussion in that case has no bearing on the issues raised in this appeal. We turn to a recent case from a federal district court in Minnesota explaining, quite accurately, we believe, that Congress designed SLUSA to close a perceived loophole in the pleading requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104-67, 109 Stat. 737:

In recent years, Congress passed two statutes designed to alleviate the problems corporations suffered as a result of class action lawsuits. The first of these, the PSLRA, was designed to curb abuse in securities suits, particularly shareholder derivative suits in which the only goal was a windfall of attorney's fees, with no real desire to assist the corporation on whose behalf the suit was brought. The PSLRA immediately drove many would-be plaintiffs to file their claims in state court, based on state law, in order to circumvent the strong requirements established by the statute. Motivated by [a purpose] to keep such lawsuits in federal court, Congress quickly passed SLUSA in order to "prevent plaintiffs from seeking to evade the protections that federal law provides against abuse litigation by filing suit in State, rather than federal, courts." With some exceptions, SLUSA made the federal courts the exclusive fora for most class actions involving the purchase and sale of securities. Primarily, SLUSA mandates that any class action based on an allegation that a "covered security" was sold [or purchased] through misrepresentation, manipulation, or deception shall be removable to federal court.

In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig., 105 F. Supp. 2d 1037, 1039 (D. Minn. 2000) (citations omitted).

Ameritrade argues that SLUSA completely preempts Green's breach of contract claim, and therefore his claim must remain in federal court. Where a party seeks to have remanded to state court a case that has been removed, as in this instance, a district court has no discretion to remand a claim that states a federal question. We review de novo the issue of whether a federal question arises from the allegations of the complaint. Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 542 (8th Cir. 1996). The party opposing remand has the burden of establishing federal subject-matter jurisdiction. See In re Bus. Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993).

The complete-preemption doctrine provides that a state-law claim becomes a federal question when Congress intends that a federal statute completely preempt the

applicable field of law.  See Caterpillar Inc., 482 U.S. at 392-93.  We have noted that "[t]he term 'complete preemption' is somewhat misleading because even when it applies, all claims are not necessarily covered.  Only those claims that fall within the preemptive scope of the particular statute, or treaty, are considered to make out federal questions."  Gaming Corp. of Am., 88 F.3d at 543.

A party seeking to establish that a claim falls within SLUSA's preemptive scope must show that the claim satisfies four criteria:  (1) the action is a "covered class action" under SLUSA, (2) the action purports to be based on state law, (3) the defendant is alleged to have misrepresented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance), and (4) the defendant is alleged to have engaged in conduct described by criterion (3) "in connection with" the purchase or sale of a "covered security."[4]   15 U.S.C.

_____

[4]The Act states:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> > (A)    a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
> >
> > (B)    that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1) (Supp. V 1999).  A covered class action is any suit brought by a class of more than 50 persons, or by one or more named parties acting as class representatives, and where "questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members." 15 U.S.C. §78bb(f)(5)(B)(i)(II) (Supp. V 1999). A "covered security" is a security listed on a stock exchange such as the New York

§§ 78bb(f)(1)-(2); <u>Shaev v. Claflin</u>, 2001 WL 548567, at *4 (N.D. Cal. 2001); <u>Prager v. Knight/Trimark Group, Inc.</u>, 124 F. Supp. 2d 229, 231 (D.N.J. 2000); <u>In re Lutheran Bhd.</u>, 105 F. Supp. 2d at 1039; <u>Burns v. Prudential Sec.</u>, 116 F. Supp. 2d 917, 921 (N.D. Ohio 2000). The District Court held that Green's amended complaint did not meet the third criterion. In this appeal, the parties dispute whether Green's amended complaint meets both the third and the fourth criteria for SLUSA preemption.[5]

## IV.

Ameritrade maintains that Green's lawsuit is "precisely the type of litigation that Congress intended to preempt" when it enacted SLUSA. Br. of Appellants at 3. Ameritrade argues that the District Court erred in remanding Green's case to state court because Green's claim alleges, both explicitly and implicitly, a misrepresentation or omission of material fact, and because the alleged misrepresentation or omission occurred "in connection with" the sale or purchase of a covered security. As we explain below, regardless of whether Green's amended complaint states a misrepresentation claim, Ameritrade has not met its burden of showing that Green's claim alleges acts "in connection with the sale or purchase of a covered security."

---

Stock Exchange or the American Stock Exchange, or an exchange with equivalent listing standards. 15 U.S.C. § 78bb(f)(5)(E) (Supp. V 1999).

[5]The District Court did not rely on the "in connection with" criterion as a ground for rejecting SLUSA preemption. Ameritrade and Green raise this argument in their briefs, and this Court may affirm the District Court "on any basis that is supported by the record." <u>Dicken v. Ashcroft</u>, 972 F.2d 231, 233 (8th Cir. 1992); <u>see also</u> <u>Schweiker v. Hogan</u>, 457 U.S. 569, 585 & n.24 (1982) (explaining that an appellee may rely upon any matter in the record in support of the judgment below).

Ameritrade does not argue that Green's amended complaint alleges that he or putative class members used price information provided by the real-time quote service to purchase or sell any particular security; instead, Ameritrade asserts that consumers in general use that kind of information to purchase and sell securities, and therefore SLUSA applies to the provision of that information in this case. This argument highlights Ameritrade's failure to understand the showing necessary to satisfy the "in connection with the sale or purchase of a covered security" criterion of SLUSA. To interpret this language we look to cases interpreting identical language found in SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 (2001), and § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1994). See, e.g., Shaw v. Charles Schwab & Co., 128 F. Supp. 2d 1270, 1272-73 (C.D. Cal. 2001); Burns, 116 F. Supp. 2d at 922-23. The Supreme Court has clearly explained the meaning of this language in the context of SEC Rule 10b-5 and § 10(b). In Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975), the Court considered whether a private cause of action for money damages could be maintained where the offeror in a stock offering violated Rule 10b-5's provisions, but where the offerees neither purchased nor sold any of the offered shares. Id. at 725. Section 10 of the Act makes it "unlawful for any person . . . (b) to use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b) (emphasis added). Rule 10b-5 repeats the highlighted "in connection with" language of the Act. 17 C.F.R. § 240.10b-5. Noting that Congress had specifically rejected suggestions to broaden the scope of the statute to include mere attempts to purchase or sell a security, the Court refused to broadly interpret that language and held that the plaintiffs lacked standing to sue because they were neither purchasers nor sellers of a security.

This Court, interpreting Blue Chip Stamps, held in Brannan v. Eisenstein, 804 F.2d 1041, 1045 (8th Cir. 1986), that "[s]tanding under section 10(b) and Rule 10b-5 is limited to actual purchasers or sellers of the securities connected with the alleged

misstatements or omissions." (Emphasis added).[6] Ameritrade argues that we must interpret the "in connection with" requirement flexibly, but we cannot ignore the plain language of the statute and the cases applying that language, both in the context of SLUSA and as interpreted in Rule 10b-5 and § 10(b) cases. Our inquiry leads us inevitably to the conclusion that nonsellers and nonpurchasers of securities are not covered by SLUSA's preemption provision. We believe that, in enacting SLUSA, Congress

> did not make class actions on behalf of "nonsellers" and "nonpurchasers" removable to federal court. In enacting the Uniform Standards Act, Congress was aware of the interpretation of § 10b of the 1934 Act, which acknowledged that causes of actions for the

---

[6]Ameritrade did not cite this case anywhere in its brief but instead directed our attention to three cases in support of the proposition that "[c]ourts have found that a misrepresentation by a broker-dealer was made in connection with the purchase or sale of a security if it affected the investor's purchase or sale of the security." Br. of Appellants at 23. One of those cases, Federal Insurance Co. v. Mallardi, 696 F. Supp. 875 (S.D.N.Y. 1988), does not even address the "in connection with" requirement, but rather discusses whether an arbitration agreement specifically excluded SEC fraud claims. Moreover, the third-party plaintiffs asserting the securities fraud action in Mallardi had actually purchased shares of the real estate tax shelter investment at issue. The other cases, Press v. Chemical Investment Services Corp., 166 F.3d 529 (2d Cir. 1999), and McCowan v. Dean Witter Reynolds, Inc., 682 F. Supp. 741 (S.D.N.Y. 1987), appeal dismissed, 889 F.2d 451 (2d Cir. 1989), determined that misrepresentation claims were subject to SLUSA, but also, importantly, both of these cases dealt with plaintiffs who had actually bought securities in reliance upon alleged misrepresentations. Ameritrade's discussion of these cases, at best, entirely misses the point of the "in connection with" requirement. We note with concern Ameritrade's failure to acknowledge the import of the "in connection with" requirement and its failure to cite to this Court the relevant Supreme Court or Eighth Circuit precedent on this particular point of law. Moreover, Ameritrade's argument appears to be somewhat short-sighted in that its logical conclusion would expose Ameritrade to liability under federal securities law to nonpurchasers or nonsellers of a security.

"nonpurchase" or "nonsale" of securities were not covered by the 1934 Act, and that state law would fill those gaps.

Gordon v. Buntrock, No. 00-CV-303, 2000 WL 556763, at *4 (N.D. Ill. Apr. 28, 2000) (Memorandum Opinion and Order); see also Gutierrez v. Deloitte & Touche, L.L.P., 147 F. Supp. 2d 584, 594-95 (W.D. Tex. 2001).

Thus, the critical question is whether Green's amended complaint can reasonably be read as alleging a sale or purchase of a covered security made in reliance on the allegedly faulty information provided to himself and to putative class members by Ameritrade. As we have noted, Green's initial complaint alleged purchases and sales by potential class members in reliance upon the real-time option quotes. Green's amended complaint completely omits any mention of such reliance. He alleges no sale or purchase of a covered security, only that he did not receive the type of information from Ameritrade for which he believed he had contracted and paid twenty dollars monthly.[7] We are satisfied that nothing in Green's amended complaint suggests that his cause of action arises from a sale or purchase of a security in reliance on information gained from Ameritrade's real-time quote service. The amended complaint simply is not susceptible to being read as alleging anything of the sort. It therefore does not satisfy the criteria for SLUSA preemption.

We are not persuaded to the contrary by Ameritrade's argument that Green has simply tried to avoid preemption through artful pleading. Ameritrade contends that "the essence of Plaintiff's securities fraud claim, which the district court originally found to be preempted, has not changed. What has changed is the label applied to

_____

[7]Moreover, during oral argument of this case Green's counsel specifically avowed that Green does not seek damages for any sale or purchase made in reliance on the allegedly erroneous price information. Green thus would appear to be judicially estopped, by reason of his representations in open court, from pursuing any such damages.

that claim, which is now conveniently styled as a breach of contract claim." Br. of Appellants at 3. We disagree. Green has omitted any reference to a sale or purchase; moreover, his prayer for relief does not rely on any alleged sale or purchase in requesting damages. Ameritrade tries to bolster its artful pleading argument by pointing out that Green has requested attorney fees under Nebraska statutes that require a showing of misrepresentation or fraud. Recovery of attorney fees under these statutes does not require, however, that Green's claim make any showing that would satisfy the "in connection with" criterion of SLUSA. See Neb. Rev. Stat. § 59-1609 (1998); Neb. Rev. Stat. § 87-303(b) (1999).

Ameritrade's remaining arguments do not affect our analysis of SLUSA's "in connection with" criteria. Ameritrade argues that Green's amended complaint at least implicitly pleads a misrepresentation claim and therefore Green must not be allowed to avoid federal jurisdiction by artful pleading. Even if Green has artfully pleaded his amended complaint to cloak a misrepresentation claim in the garb of a breach-of-contract claim, no SLUSA preemption applies because his complaint does not satisfy the SLUSA "in connection with" requirement. Misrepresentation claims come in many forms that do not necessarily involve any purchase or sale of a security. Green may even plead such a claim and escape SLUSA preemption, so long as his state-law claim does not require him to prove there was a sale or purchase of a covered security in reliance on the misrepresentation. See Abada v. Charles Schwab & Co., 127 F. Supp. 2d 1101, 1103 (S.D. Cal. 2000) (remanding to state court class-action lawsuit seeking to recover for online brokerage service's misrepresentations about its online trading system because claim "had nothing to do with the trading of any particular security and any misrepresentation made . . . did not affect the value of the security but merely involved the relationship between [the online broker] and its customers"). Ameritrade also argues that SLUSA preempts misrepresentation claims based on state law even where the state law does not require the kind of scienter mandated by the federal securities fraud statutes. Ameritrade's argument may have some merit, as a proposition of law, but the point is irrelevant because Ameritrade has not carried its

-12-

burden of showing that Green's amended complaint meets SLUSA's "in connection with" criterion.

V.

Having found no basis for SLUSA preemption of the amended complaint, the District Court, making a decision within its broad discretion, declined to exercise supplemental jurisdiction over the case. Ameritrade does not challenge the District Court's discretionary decision not to retain the case under its supplemental jurisdiction. For the reasons stated in this opinion, we affirm the order of the District Court remanding the amended complaint to state court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.