**Donald BRADFISCH, individually and on behalf of all other similarly situated, Plaintiffs,**

v.

**TEMPLETON FUNDS, INC., and Templeton Global Advisors, Ltd., Defendants.**

**No. 03–CV–0760–MJR.**

United States District Court, S.D. Illinois.

Feb. 12, 2004.

---

George A. Zelcs, Korein Tillery, Klint L. Bruno, Ellison, Nielsen et al., Chicago, IL, Stephen M. Tillery, Korein Tillery, Swansea, IL, for Plaintiffs.

Anthony Zaccaria, Daniel A. Pollack, Edward T. McDermott, Martin I. Kaminsky, Pollack & Kaminsky, New York City, Frank N. Gundlach, Glenn E. Davis, Armstrong Teasdale, St. Louis, MO, for Defendants.

## MEMORANDUM and ORDER

REAGAN, District Judge.

In October 2003, Donald Bradfisch filed a putative class action suit in the Circuit Court of Madison County, Illinois against Templeton Funds, Inc. ("Templeton Funds") and Templeton Global Advisors, Limited ("Templeton Global"). The Court may refer to Templeton Funds and Templeton Global collectively as "Defendants" herein. Bradfisch alleged as follows.

Templeton Funds, a Maryland corporation with its principal place of business in Fort Lauderdale, Florida, is the "sponsor" of Templeton World Fund (an open end mutual fund). Bradfisch owned shares in Templeton World Fund "for the purpose of long term investing in international securities." Templeton Global, a Bahamas corporation with its principal place of business in Nassau, Bahamas, is the invest-

ment manager for the Templeton World Fund. As the investment manager, Templeton Global selects the fund's investments and supervises most phases of the fund's business, including valuing the fund's portfolio securities.

Shares of open end mutual funds are sold to investors based on "net asset value" ("NAV"). NAV depends upon the fluctuating value of the fund's underlying portfolio of securities. Defendants value their assets in a manner that does not reflect all price relevant information. For example, during the interval that elapses between when Defendants set their share NAV "and release it to the NASD for communication to the public," securities markets in countries such as Japan, Russia, Germany, and Australia have traded for an entire session.

In other words, Defendants use stale closing prices to calculate NAV. Those prices do not reflect current market values of foreign securities. Bradfisch claims that Defendants' use of stale prices to value their fund shares negatively affects fund shareholders, because market timing traders take advantage of Defendants' stale pricing and obtain excess profits at the expense of shareholders (like Bradfisch) who are non-trading long term buy-and-hold investors.

Count I of Bradfisch's complaint alleges that Defendants breached their duty of care owed to owners of the Templeton World Fund by, *inter alia*, failing to implement proper portfolio valuation and share pricing policies. Count II alleges that Defendants wilfully and wanton breached their duties to investors. Each count seeks compensatory and punitive damages, prejudgment interest, costs, and attorneys' fees "not to exceed $75,000 per plaintiff or class member."

In November 2003, Defendants timely removed the action to this United States District Court, asserting that subject matter jurisdiction lies under both 28 U.S.C. § 1332, the diversity statute, and 28 U.S.C. § 1331, the federal question statute.

On threshold review of the file, the undersigned Judge raised several concerns regarding subject matter jurisdiction. As to diversity jurisdiction under § 1332, the Court noted that the removal notice properly alleged complete diversity between the parties, but the Court questioned whether the amount in controversy sufficed. The Court also raised questions regarding federal question jurisdiction under § 1331.

As directed by the Court, the parties filed thorough jurisdictional briefs on December 23, 2003 and January 9, 2004 (Docs. 16, 17). Having carefully reviewed those briefs, as described below, the Court concludes that it lacks subject matter jurisdiction.

■ For a defendant to successfully remove a *class action* based on diversity, at least one of the named plaintiffs must have a claim that surpasses the $75,000 jurisdictional bar. *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir.1997), *cert. denied*, 522 U.S. 1153, 118 S.Ct. 1178, 140 L.Ed.2d 186 (1998); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 409 (7th Cir.2000). If one named plaintiff meets the jurisdictional minimum, the other named plaintiffs and class members can "piggyback" on that plaintiff's claim, via supplemental jurisdiction under 28 U.S.C. § 1367. *Brand Name*, 123 F.3d at 607.

Bradfisch's state court complaint explicitly *disclaims* damages in excess of $75,000. Additionally, his counsel filed an affidavit attesting that the total money damages sought by Plaintiffs herein, "including all damages specifically plead in the Complaint as well as all other damages to which Plaintiff and members of the class may otherwise be entitled, ... is less than

$75,000 per Plaintiff or class member" (*see* attachments to Doc. 2).

■ But Defendants maintain that this case actually is a *derivative* action on behalf of the fund in which Bradfisch held shares. In the removal notice, Defendants argue that any injury suffered by Bradfisch is not *distinct* from the injury suffered by all shareholders of the fund, so the amount in controversy easily exceeds $75,000 (*see* Doc. 1, p. 2, p. 5). In their jurisdictional brief, Defendants argue that the injury alleged by Bradfisch is injury to *the fund*: "the Fund is deprived of the correct amount of money it is entitled to" (Doc. 17, p. 4). The Court disagrees.

Counsel both cite Maryland law on the question of whether the complaint presents a derivative claim or a direct claim. Maryland law does govern this issue, because the fund in question is incorporated in Maryland. Whether a suit is derivative or direct is governed by the law of the state of incorporation. *Kennedy v. Venrock Associates*, 348 F.3d 584, 589–90 (7th Cir.2003)(**The question whether a suit is derivative by nature or may be brought by a shareholder in his own right is governed by the law of the state of incorporation**). *See also Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir.1996); *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382 (7th Cir. 1990).

In *Strougo v. Bassini*, 282 F.3d 162, 171 (2nd Cir.2002), a plaintiff/shareholder sued the directors and officers of his closed-end mutual fund, alleging that a rights offering was coercive in that is penalized shareholders who did not participate. The district court dismissed the shareholder's direct claims on the ground that the injuries alleged "applied to the shareholders as a whole." The United States Court of Appeals for the Second Circuit *reversed* the dismissal.

Applying Maryland law, the Second Circuit concluded that the shareholder could sue the defendants *directly* on the claims resulting from the coercive nature of rights offering.

[I]n the case of both the participating and non-participating shareholders, it would appear that the alleged injuries were to the shareholders alone and not to the Fund. These harms therefore constitute "direct" shareholder claims under Maryland law. **The corporation cannot bring the action seeking compensation for these injuries because they were suffered by its shareholders, not itself.**

*Id.*, 282 F.3d at 175.

The same logic applies in the instant case. Bradfisch's reduced equity value in the fund did not result from a reduction in fund assets but from a reallocation of equity value to the market time traders who bought the fund's undervalued shares. The fund *itself* was not injured by the sale of the undervalued shares. Rather, the injury alleged in the complaint is injury to Bradfisch (and those similarly situated to him). Those claims do not clear the $75,000 amount in controversy hurdle. Because the amount in controversy does not suffice, this Court cannot exercise subject matter jurisdiction under the diversity statute, 28 U.S.C. § 1332.

Defendants also invoke subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331. Specifically, Defendants present two bases of federal question jurisdiction.

First, Defendants maintain that if any of Bradfisch's claims are individual claims, they are claims "in connection with the purchase or sale of securities" and thus exist under (or are preempted by) a federal security law—the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77, *et seq.*

SLUSA provides for the removal to federal court of certain class actions based on state law. 15 U.S.C. § 78bb(f). *Accord Professional Mgt. Associates, Inc. Employees' Profit Sharing Plan v. KPMG, LLP,* 335 F.3d 800, 802 (8th Cir.2003). SLUSA was enacted to prevent plaintiffs from seeking to evade the protections that federal law provides against abusive litigation by filing suit in state court. *Newby v. Enron Corp.,* 338 F.3d 467, 471 (5th Cir. 2003). The primary way SLUSA accomplishes this objective is by preempting certain securities fraud class actions brought under state law. *Id.* One United States Court of Appeals has explained:

> With some exceptions, SLUSA made the federal courts the exclusive fora for most class actions involving the purchase and sale of securities. Primarily, SLUSA mandates that any class action based on an allegation that a "covered security" was sold [or purchased] through misrepresentation, manipulation, or deception shall be removable to federal court.

*Green v. Ameritrade, Inc.,* 279 F.3d 590, 595–96 (8th Cir.2002).

■ Clearly, though, not *all* securities claims are preempted by SLUSA. A party claiming SLUSA preemption must demonstrate that the claim satisfies each of four criteria:

> (1) the action is a "covered class action" under SLUSA, (2) the action purports to be based on state law, (3) the defendant is alleged to have misrepresented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance), and (4) the defendant is alleged to have engaged in conduct described by criterion (3) "in connection with" the purchase or sale of a "covered security."

*Green* at 596, *citing* 15 U.S.C. §§ 78bb(f)(1)-(2).

■ The parties have furnished detailed arguments on whether SLUSA preempts (and thus permits removal of) Bradfisch's claims. The Court will not repeat those arguments here. The Court concludes that Defendants have *not* met the fourth requirement for SLUSA preemption. Bradfisch's claims are not claims "in connection with the purchase or sale of a covered security."

As Bradfisch's counsel correctly note (Doc. 16, pp. 8–9), if a claim is not cognizable under Section 10(b)(5) of the Securities and Exchange Act of 1934 because not "in connection with the purchase or sale of a covered security," it similarly is not a claim "in connection with the purchase or sale of covered security" for SLUSA purposes.

In the case *sub judice,* Bradfisch claims dilution of his ownership interests and voting rights. Bradfisch's complaint alleges dilution claims that only a holder of securities can bring. Such claims are not actionable under the Securities and Exchange Act of 1934. State law, not the 1934 Act, provides the remedy sought by Bradfisch and the class of holders he seeks to represent. Bradfisch's claims cannot be removed under SLUSA. The Court rejects Defendants' first ground for removal under the federal question statute.

Defendants next argue that this Court may exercise federal question jurisdiction based on § 43 of the Investment Company Act of 1940, 15 U.S.C. § 80a–43. The Investment Company Act of 1940, 15 U.S.C. §§ 80a–1, *et seq.* ("ICA"), seeks to protect investment companies and their shareholders against overreaching or self-dealing by officers, directors, and other affiliated persons. *Securities and Exchange Commission v. Advance Growth Capital Corp.,* 470 F.2d 40, 44 (7th Cir. 1972).

For instance, the ICA mandates that "[n]o person shall serve as a director of a registered investment company unless elected to that office." 15 U.S.C. § 80a–16(a). Another provision of the ICA—§ 22(d)—provides that no dealer shall sell mutual fund shares to any person "except a dealer, a principal underwriter, or the issuer, except at a current public offering price described in the prospectus."

More to the point for the instant case, § 43 of the ICA, 15 U.S.C. § 80a–43, vests United States District Courts with jurisdiction over "suits in equity and actions at law brought to enforce any liability or duty created by ... this subchapter or the rules, regulations, or orders thereunder." Relying on § 43, Defendants argue that Bradfisch's claims are rooted in, and preempted by, federal law, since the claims involve the interpretation and application of federal securities regulations or rules (see Doc. 1, p. 4).

This argument is not persuasive. Bradfisch has asserted no claim under the ICA, and Defendants have identified no provision of the ICA which renders Bradfisch's state law claims *removable* to this District Court.

28 U.S.C. § 1331 confers original jurisdiction over civil actions arising under the Constitution or laws of the United States. Defendants have not shown that any claim alleged by Bradfisch arises under the United States Constitution, arises under federal statutes, or is preempted by federal law. Furthermore, the amount in controversy herein does not exceed $75,000, as required for diversity jurisdiction under 28 U.S.C. § 1332. Thus, this Court cannot exercise subject matter jurisdiction under either § 1331 or § 1332.

Because this Court lacks subject matter jurisdiction, it hereby REMANDS this action to the Circuit Court of Madison County, Illinois.

**IT IS SO ORDERED.**