# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3734

_____

| | | |
|---|---|---|
| Donald S. Sofonia, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Principal Life Insurance Company; | * | Southern District of Iowa. |
| Principal Financial Group, Inc.; | * | |
| Principal Financial Services, Inc., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: April 20, 2006
Filed: October 20, 2006

_____

Before LOKEN, Chief Judge, BOWMAN and BYE, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Donald Sofonia appeals an order of the District Court[1] dismissing his state-law claims for fraud, breach of fiduciary duty, and unjust enrichment against Principal Life Insurance Company, Principal Financial Group, Inc., and Principal Financial Services, Inc. (collectively, Appellees) in connection with the demutualization of Principal Life Insurance Company. The District Court denied Sofonia's motion to

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

remand the action to Iowa state court and dismissed Sofonia's complaint based on application of the Securities Litigation Uniform Standards Act of 1998 (SLUSA or the Act), Pub. L. No. 105-353, 112 Stat. 3227 (codified as amended in scattered sections of 15 U.S.C.). We affirm.

In March 2001, the Board of Directors of Principal Mutual Holding Company (PMHC), an Iowa mutual insurance holding company, adopted a plan to demutualize, i.e., to convert from a mutual company into a stock company. As a mutual insurance holding company, PMHC had no stockholders. Instead, PMHC was governed by the policyholders of its wholly owned subsidiary, Principal Life Insurance Company (Principal Life), a stock life insurance company. Principal Life policyholders held membership interests in PMHC entitling them to, inter alia, vote on the election of PMHC directors and receive proceeds in the improbable event of PMHC's liquidation. Pursuant to the demutualization plan, all eligible Principal Life policyholders would receive shares of common stock of Principal Financial Group, Inc. (PFG), a publicly traded company, in exchange for their membership interests in PMHC.[2] The demutualization plan was submitted for approval to eligible Principal Life policyholders, each of whom received a notice package containing a Policyholder Information Booklet explaining the demutualization, a proxy card for voting on the plan, and other related materials (collectively, the PIB). The Iowa Commissioner of Insurance reviewed and authorized the demutualization plan and the PIB, the required number of Principal Life policyholders voted in favor of the transaction, and the demutualization became effective in October 2001.

In April 2001, Principal Life policyholders settled a class action lawsuit alleging that Principal Life had engaged in deceptive sales practices. See Grove v.

---

[2]Although most eligible policyholders, including Sofonia, received shares of PFG common stock in the demutualization, a small number of policyholders elected to receive or were required by regulatory, tax, or administrative reasons to receive cash or other consideration in lieu of PFG common stock.

Principal Mut. Life Ins. Co., 200 F.R.D. 434 (S.D. Iowa 2001) (the Grove class action). Sofonia estimates that Appellees paid approximately $375 million—including attorney fees—to settle the Grove class action.

After the demutualization was completed, Donald Sofonia, a member of the Grove class and the putative class representative in this appeal, filed a complaint in Iowa state court alleging that Appellees made deceptive statements in the PIB that induced Principal Life policyholders to vote in favor of the demutualization. According to Sofonia, this fraudulent conduct enabled Appellees to improperly shift the economic costs of the Grove settlement back to the Grove class members because the Grove class members received fewer shares of PFG common stock in the demutualization than they would have received absent Appellees' misconduct.

Asserting application of SLUSA, Appellees removed the action to federal court and moved for dismissal, arguing that Sofonia's complaint alleged misrepresentations or omissions in connection with the purchase or sale of covered securities under the Act. Sofonia moved to remand the case to Iowa state court, disputing Appellees' contention that SLUSA applied to preempt state-court jurisdiction.

The District Court denied Sofonia's motion to remand and granted Appellees' motion to dismiss. Sofonia now appeals, arguing that the District Court erred in concluding that the exchange of PMHC membership interests for shares of PFG common stock in the demutualization was a purchase of covered securities under SLUSA. Sofonia also contends that the District Court erred in concluding that his complaint asserts misrepresentations or omissions of material fact in connection with the purchase or sale of covered securities under SLUSA. We review de novo both the District Court's denial of Sofonia's motion to remand, see Nichols v. Harbor Venture, Inc., 284 F.3d 857, 860 (8th Cir. 2002), and its dismissal of Sofonia's action for failure to state a claim upon which relief could be granted, see In re Acceptance Ins. Cos. Sec. Litig., 423 F.3d 899, 903 (8th Cir. 2005).

SLUSA, which amended the Securities Act of 1933 and the Securities and Exchange Act of 1934, "expressly preempts all state law class actions based upon alleged untrue statements or omissions of a material fact, or use of a manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security." Dudek v. Prudential Sec., Inc., 295 F.3d 875, 879 (8th Cir. 2002). The Act was intended to "prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than in Federal, court." H.R. Rep. No. 105-803 (Oct. 9, 1998) (Conf. Rep.). An action is subject to removal and dismissal under SLUSA if the party seeking to invoke SLUSA's application shows that (1) the action is a "covered class action" as defined in the Act (2) the action purports to be based on state law, (3) the action alleges that the defendant misrepresented or omitted a material fact (or used or employed a manipulative or deceptive device or contrivance), and (4) the action alleges that the defendant's misrepresentations or omissions of material fact were made "in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 77p(b)–(c), 78bb(f)(1)–(2); see also Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002). Sofonia concedes that Appellees have satisfied the first and second criteria—his lawsuit is a covered class action based on Iowa state law. Sofonia also concedes that Appellees have satisfied the third criterion—his lawsuit alleges that Appellees misrepresented or omitted material facts in documents disseminated in connection with the demutualization. Sofonia disputes, however, that Appellees have satisfied the fourth criterion—that his action alleges misrepresentations or omissions made by Appellees in connection with a purchase or sale of a covered security. Therefore, "the critical question is whether [the] complaint can reasonably be read as alleging a sale or purchase of a covered security made in reliance on the allegedly faulty information provided to [Sofonia] and to putative class members by [Appellees]." Green, 279 F.3d at 598.

Sofonia first argues that the District Court erred in concluding that the demutualization involved covered securities as required for application of SLUSA.

According to Sofonia, "[T]his case involves insurance products, not covered securities, and is therefore outside the scope" of SLUSA. Brief of Appellant at 9. This argument is unavailing.

SLUSA defines a covered security as, inter alia, a security "listed, or authorized for listing, on the New York Stock Exchange." 15 U.S.C. § 77r(b)(1)(A); see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503, 1512 (2006). While this definition excludes the PMHC membership interests surrendered by Principal Life policyholders in the demutualization, it includes the shares of PFG common stock received by the policyholders in exchange for their membership interests. Because PFG common stock is traded on the New York Stock Exchange, it falls precisely within SLUSA's definition of a "covered security."[3] The District Court did not err in reaching this conclusion.

Sofonia next argues that the District Court erred in determining that his complaint asserted a claim that Appellees misrepresented or omitted material facts "in connection with the purchase or sale" of a covered security. After concluding that the receipt of shares of PFG common stock by Principal Life policyholders in the demutualization was a "purchase" within the scope of SLUSA, the District Court went on to conclude that Sofonia's claim that Appellees made fraudulent statements

_____

[3]During oral argument, Sofonia suggested for the first time that because the process for registering PFG common stock with the New York Stock Exchange was not complete when the alleged misrepresentations or omissions were made by Appellees, the shares of PFG common stock received by Principal Life policyholders in the demutualization were not covered securities. Sofonia did not present this argument to the District Court nor did he raise it in his briefs to this Court. "'[I]t is well established that, unless a manifest injustice would result, a claim not articulated to the district court is subject to forfeit on appeal.'" Ace Elec. Contractors, Inc. v. Int'l Bhd. of Elec. Workers Local 292, 414 F.3d 896, 903 (8th Cir. 2005) (citation to quoted case omitted). Because no manifest injustice would result, we decline to address this argument.

in the PIB in order to induce policyholders to approve the demutualization amounted to a claim that Appellees misrepresented or omitted material facts "in connection with" the purchase of PFG common stock. The District Court ultimately concluded that all requirements for application of SLUSA were satisfied. We agree.

We construe the phrase "in connection with the purchase or sale of a covered security" as used in SLUSA by looking to interpretations of identical language used in § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and in Securities and Exchange Commission (SEC) Rule 10b-5, 17 C.F.R. § 240.10b-5. See Dabit, 126 S. Ct. at 1513 (confirming that reference to § 10(b) and Rule 10b-5 to interpret this phrase is appropriate); Green 279 F.3d at 597 ("To interpret [the phrase "in connection with a purchase or sale of a covered security,"] we look to cases interpreting identical language found in SEC Rule 10b-5 . . . and § 10(b) of the Securities Exchange Act of 1934 . . . ."); Kircher v. Putnam Funds Trust, 403 F.3d 478, 482 (7th Cir. 2005) ("Every court of appeals to encounter SLUSA has held that its language has the same scope as its antecedent in Rule 10b-5."), cert. granted in part, 126 S. Ct. 979 (2006). As used in § 10(b) and Rule 10b-5, the phrase "in connection with the purchase or sale of a covered security" is "construed 'not technically and restrictively, but flexibly.'" Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 151 (1972) (quoting SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195 (1963)); see also Dabit, 126 S. Ct. at 1513 (noting that when the Court has "sought to give meaning to [this] phrase in the context of § 10(b) and Rule 10b-5, it has espoused a broad interpretation").

We first address whether the exchange of PMHC membership interests for shares of PFG common stock qualifies as a "purchase or sale." The exchange of an existing security for a new security can qualify as a "purchase or sale" under federal securities laws. See, e.g., SEC v. Nat'l Sec., Inc., 393 U.S. 453, 465–68 (1969) (concluding that shareholders of one company "purchased" shares in a new company within the meaning of §10(b) and Rule 10b-5 by exchanging their old shares for

-6-

shares in the new company in a merger transaction); Davidson v. Belcor, Inc., 933 F.2d 603, 606 (7th Cir. 1991) ("It is well-established that the exchange of shares during a merger transaction constitutes the purchase or sale of securities for purposes of Section 10(b) and Rule 10b-5."); Knauff v. Utah Constr. & Mining Co., 408 F.2d 958, 961 (10th Cir.) (noting that "purchase or sale" includes the exchange of shares that occurs in a merger), cert. denied, 396 U.S. 831 (1969). Courts have looked to the economic reality of a transaction to determine whether it qualifies as a "purchase or sale." If a transaction results in "a fundamental transformation" of ownership interests, "whether in terms of total assets represented . . . or in relative voting power," it constitutes a "purchase or sale" as contemplated under federal securities laws. Watts v. Des Moines Register & Tribune, 525 F. Supp. 1311, 1320 (S.D. Iowa 1981); see also In re Penn Central Sec. Litig., 494 F.2d 528, 534 (3d Cir. 1974) (concluding that in a merger transaction in which "the original shareholders of each corporation end up with stock in a substantially different company with substantially different assets and prospects," a purchase or sale under federal securities laws has occurred). On the other hand, if a transaction amounts to a mere internal restructuring of a business entity with no material change in ownership interests or risks, it is not a "purchase or sale." See, e.g., Rathborne v. Rathborne, 683 F.2d 914, 918–19 (5th Cir. 1982) (observing that "arms-length stock-for-assets trade between two distinct and independent corporations" constitutes a "purchase or sale," but holding that an exchange of shares between a parent company and a wholly owned subsidiary amounting to "a mere transfer between corporate pockets" does not (citations omitted)); Watts, 525 F. Supp. at 1319 (holding that recapitalization was not a "purchase or sale" when conversion of voting shares to nonvoting shares in prescribed ratio reflected internal corporate management decision only incidentally involving exchange of shares).

With the approval of policyholders and the authorization of the Iowa Commissioner of Insurance, PMHC developed a demutualization plan ensuring that each Principal Life policyholder would receive a "fair and equitable" allocation of

PFG common stock in exchange for his PMHC membership interest. Pursuant to this plan, Sofonia and other policyholders exchanged their non-transferable membership interests in PMHC for tangible, transferable, value-certain, shares of PFG common stock. In making this exchange, the policyholders—including Sofonia—dramatically altered the nature of their investment "from a non-liquid, non-property interest into a concrete equity and ownership interest in a freely transferable security." Order of the District Court at 14. This transaction was not a mere internal restructuring or exchange of equivalent instruments, for the economic reality of the transaction demonstrates that the policyholders purchased covered securities—PFG common stock—in the transaction. The District Court did not err in reaching this conclusion.[4]

We have concluded that the exchange of PMHC membership interests for shares of PFG common stock was a purchase of covered securities under SLUSA. We must next determine whether Sofonia's claim that Appellees made false statements in the PIB in order to induce policyholders to approve the demutualization plan constitutes a claim under SLUSA that the false statements were made "in connection with" the purchase of covered securities. Sofonia argues that his claims do not allege misrepresentations "in connection with" the purchase of covered securities because any purchase of securities in the demutualization was merely "incidental" to his underlying theory of recovery—that Appellees used the demutualization to improperly recapture the costs of the Grove class action

[4]Sofonia also contends that SLUSA should not apply because the putative class includes some individual policyholders who received something other than shares of PFG common stock in the demutualization and thus were not "purchasers" of "covered securities." This argument is foreclosed by the Supreme Court's recent decision in Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 126 S. Ct. 1503, 1515 (2006), holding that it is not "the identity of the plaintiffs," but the alleged conduct of the defendants that "determine[s] whether the complaint alleges fraud 'in connection with the purchase or sale' of securities." Accordingly, Sofonia cannot avoid SLUSA's application by including some nonpurchasers or nonsellers of covered securities in the putative class.

settlement. Specifically, Sofonia contends that "[t]he presence of securities in this case is incidental to [his] main concern, which is the wrongful recapture by Appellees in the demutualization of the settlement benefits paid out by Appellees to the class members in the [Grove] class action." Brief of Appellant at 12. As a result of Appellees' false statements, Sofonia argues, he and other putative class members received fewer shares of PFG common stock—and therefore less value—in the demutualization than they were entitled to receive for their PMHC membership interests.

The crux of Sofonia's complaint is that Appellees made false statements in the PIB to induce policyholders to approve the demutualization and that he and the other putative class members did not receive fair value when they exchanged their membership interests for shares of PFG common stock in the transaction. As noted by the District Court, "The alleged fraudulent conduct was, therefore, an integral step in [Sofonia's] exchange of his membership interest for PFG stock and the present action satisfies the 'in connection with' requirement for SLUSA preemption." Order of the District Court at 10; see also In re MetLife Demutualization Litig., 322 F. Supp. 2d. 267 (E.D.N.Y. 2004) (accepting without discussion that putative class action alleging similar facts was a claim asserting fraudulent conduct "in connection with the purchase or sale" of a covered security). Sofonia's complaint alleges that the exchange of PMHC membership interests for shares of PFG common stock was the means by which Appellees improperly recaptured the costs of the Grove settlement. Any fraudulent statements allegedly made by Appellees to persuade policyholders to approve this transaction most assuredly were made "in connection with" the policyholders' purchase of PFG common stock. The District Court did not err in reaching this conclusion.

During oral argument, we raised an issue not addressed by Sofonia or Appellees before the District Court or in the parties' briefs to this court. Specifically, we asked whether the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015, prevents

-9-

application of SLUSA in this case. Appellees moved to file a supplemental brief addressing this issue. We grant that motion, the brief is before us, and we conclude that the McCarran-Ferguson Act does not preclude application of SLUSA.

The McCarran-Ferguson Act prevents application of federal law if (1) the application would "invalidate, impair, or supersede" a state law; (2) the state law was "enacted . . . for the purpose of regulating the business of insurance"; and (3) the federal law does not "specifically relate[] to the business of insurance." Id. § 1012(b). A claim only incidentally involving insurance is insufficient to trigger application of the McCarran-Ferguson Act. Rather, the claim must involve a state law enacted with the specific purpose of regulating the business of insurance in order to trigger application of the McCarran-Ferguson Act. See Humana, Inc. v. Forsyth, 525 U.S. 299, 308 (1999) ("We reject any suggestion that Congress intended to cede the field of insurance regulation to the States, saving only instances in which Congress expressly orders otherwise."). Here, Sofonia asserts only state common-law claims against Appellees. Sofonia contends that Appellees breached their fiduciary duties to policyholders, engaged in fraud and misrepresentation, and were unjustly enriched as a result. Because each of these claims is based on state common-law principles and none of the claims implicates a state statute enacted specifically to regulate the business of insurance, the McCarran-Ferguson Act does not prevent application of SLUSA. See id.

Nor does application of SLUSA to bar Sofonia's state common-law claims interfere with Iowa's regulation of insurance company demutualizations. Under Iowa's system for regulating the insurance business, policyholders like Sofonia and other members of the putative class who objected to PMHC's demutualization plan had ample opportunity to present their objections at a public hearing before the Iowa Insurance Commissioner, see Iowa Code § 508B.7, and, if the policyholders were still dissatisfied, to have pursued direct judicial review of the Insurance Commissioner's final decision in the Iowa courts, see id. §§ 17A.19; 508B.14. We are satisfied that

-10-

the application of SLUSA to Sofonia's state common-law claims does not "invalidate, impair, or supersede any law enacted by [the State of Iowa] for the purpose of regulating the business of insurance."  15 U.S.C. § 1012(b).

For the foregoing reasons, we affirm the judgment of the District Court.

_____