# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2078

_____

In re: Acceptance Insurance Companies   *
Securities Litigation   *
  *
Lawrence I. Batt, P.C. Profit Sharing   *
Plan and Trust, Individually and on   *
Behalf of All Others Similarly Situated,   *
  *
         Plaintiff,   *
  *
Jerome S. Richman, Co-Trustee of the   *
Joe Sonken Trust; Diana L. Kinder;   *
Barbara Winer Revocable Trust, on   *
Behalf of Themselves and a Class of All   *
Others Similarly Situated,   *
  *
         Plaintiffs - Appellants,   *
  *  Appeal from the United States
         v.   *  District Court for the District of
  *  Nebraska
Acceptance Insurance Companies, Inc.;   *
Kenneth C. Coon; Georgia M. Mace;   *
AICI Capital Trust; John P. Nelson,   *
  *
         Defendants - Appellees,   *
  *
William J. Gerber; Jay A.Bielfield;   *
Edward W. Elliot, Jr.; Robert Lebuhn;   *
Michael R. McCarthy; R. L. Richards;   *
David L. Treadwell; Doug T. Valassis;   *
Advest, Inc.; Everen Securities; Deloitte   *
& Touche, LLP,   *
  *
         Defendants.   *

_____

Submitted: February 14, 2005

Filed: August 29, 2005

_____

Before MELLOY, HEANEY, and FAGG, Circuit Judges.

_____

MELLOY, Circuit Judge.

This is an appeal of a shareholder liability suit against Acceptance Insurance Companies and some of its officers. The shareholder group appeals the district court's[1] orders granting a motion to dismiss and a motion for summary judgment as to all of their claims.

The Appellants raise three major issues in this appeal. First, they argue that the district court erred by granting the Appellees' motion to dismiss their claims under Sections 11 and 15 of the Securities Act. Second, the Appellants argue that the district court erred by denying their motion to amend their complaint as to Section 11 claims. Third, the Appellants argue that the district court should not have granted the motion for summary judgment on the Exchange Act Section 10(b) and SEC Rule 10b-5 claims. We affirm.

_____

[1] The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska and The Honorable Laurie Camp Smith, United States District Judge for the District of Nebraska both granted motions for the issues on appeal in this case.

I.

The shareholders of Acceptance Insurance Companies, Inc. ("Acceptance"), a Delaware corporation, directly sued Acceptance, AICI Capital Trust ("AICI"), and the officers of Acceptance: Kenneth Coon, Georgia Mace, and John Nelson. AICI was and is a wholly-owned subsidiary of Acceptance. The primary allegation of the shareholders was that Acceptance failed to have adequate reserves in place prior to 1999 to account for increased claims stemming from a California Supreme Court decision.

Reserves, as reported by an insurance company, are estimates of its liabilities and expenses that it will pay on claims already reported and claims that may exist, but have not yet been reported. In the area of unreported claims, an insurer must engage in some speculation and, as a result, could over- or under-estimate appropriate reserves. A company is said to have inadequate reserves if it does not allocate sufficient funds to offset a likely loss contingency scenario.

The officers of Acceptance reported the company's reserves quarterly with assistance from external accountants. In this case, Price Waterhouse Coopers ("PWC") reviewed the reserve estimates, and, after discussion with Acceptance, a final figure was reported in each quarter in Acceptance's public filings. Because the reserve figures were estimates of future contingencies, Acceptance and PWC offered a range of figures. From 1996 to 1999, PWC found that Acceptance's reserve figures met the requirements of Nebraska insurance law and were computed using generally accepted accounting principles ("GAAP"). During the relevant time period, Acceptance's and PWC's independent estimates were within five percent of each other, and Acceptance's numbers were both above and below PWC's figures.

In 1995, the California Supreme Court, in <u>Montrose Chem. Corp. of Cal.v. Admiral Ins. Co.</u>, 913 P.2d 878 (1995), issued an opinion that was significant for construction insurance claims. The decision applied a continuous injury trigger of

coverage, broadening liability relative to previous law. Id. at 889-90. After the decision, Acceptance crafted explicit exclusions into its policies to avoid Montrose-related claims. However, for the policies written before 1995, an increase in the number of claims was anticipated due to the decision in Montrose.

In 1997, Nebraska amended its annual statement requirements to require greater detail for loss contingencies that could affect reserves. As a result, Acceptance added cautionary language alluding to the Montrose decision and its effect on reserves. Such language did not exist for the previous public filings made by Acceptance. In 1999, Acceptance made the decision to increase its reserve estimates due to increased claims for incidents prior to 1995 in California related to Montrose. Prior to Acceptance's decision, three other insurance companies had already begun reporting Montrose-specific reserves in their public filings.

In 2001, in another action against Acceptance, Magid v. Acceptance Ins. Co., 2001 WL 1497177, *8 (Del. Ch. 2001), the Delaware Court of Chancery stated that the effect of Montrose was significant and the company may have needed to make timely adjustments to its reserves. The issue in Magid was more limited than the present matter, and the Magid court did not render any specific findings that Acceptance was under-reserved during the class period.

The district court granted a defense motion to dismiss one claim and a defense motion for summary judgment as to all others. The shareholders have appealed.

II.

On appeal, the Appellants argue that the district court erred by dismissing the shareholders' suit under Section 11 of the Securities Act of 1933 on the grounds that the complaint contained no factual allegations to support the claims described therein. The Securities Act is primarily designed to ensure that investors receive information concerning the issuance of securities. The Act prohibits misrepresentations and fraud

in the sale of securities. Since the district court granted dismissal based upon a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), we review the issue de novo. Romine v. Acxiom Corp., 296 F.3d 701, 704 (8th Cir. 2002).

There is liability under Section 11 if "any part of the registration statement, when such part became effective, contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). To establish a Section 11 claim, a plaintiff must show that he or she bought the security and that there was a material misstatement or omission. Herman & Maclean v. Huddleston, 459 U.S. 375, 382 (1983). There is no scienter requirement for a Section 11 claim. In re NationsMart Corp. Sec. Litig., 130 F.3d 309, 315 (8th Cir. 1997). Further, the particularity requirements of Federal Rule of Civil Procedure 9(b) do not apply to Section 11 claims. Id. at 314.

A related issue that the parties and the district court addressed with the Section 11 claim was whether Acceptance followed proper accounting principles. Under 17 C.F.R. § 210.4-01(a)(1), financial statements to the SEC must be made in accordance with GAAP. The Appellants allege that Acceptance did not adhere to Financial Accounting Standard No. 5 (FAS-5) in accounting for its contingencies. To comply with FAS-5, a loss contingency statement must include information available prior to the issuance of the financial statement explaining that an asset had been impaired or the amount of loss in the future can be reasonably estimated. The Appellants' claim under Section 11 is that the Appellees' registration statement misstated the reserve holdings of the company because they did not take into account the Montrose decision. A registration statement is a set of documents, including a prospectus, that a company disseminates in conjunction with an issuance of securities.

The district court held that the Appellants' Section 11 claim was insufficient as a matter of law. Even under the liberal pleading requirements of Federal Rule of Civil Procedure 8(a), the district court found that the Appellants had failed to state

any facts to support their claim. Notably missing was any fact alleged in the complaint that indicated Acceptance's reserves were inadequate in light of the <u>Montrose</u> decision.

Appellants argue that numerous statements made by the Appellees after the registration statement was issued show that Acceptance's reserves were inadequate at the time of issuance. However, this type of retrospective analysis of awareness cannot be the basis for a claim. <u>See, e.g.</u>, <u>Scibelli v. Roth</u>, 2000 WL 122193, *3 (S.D.N.Y. 2000) (noting that it is "not a reasonable inference" to assume prior knowledge based upon actual knowledge at a later date). Under both FAS-5 and Section 11, information is required to be included only if it is available prior to the issuance of a financial statement. The Appellants' complaint alleges no such facts to support prior knowledge by the Appellees. The Appellants are only able to cite comments after the statement was issued. Even those alleged facts close in time to the issuance of the statement only speak to the general importance of the <u>Montrose</u> decision, not the failure to assess any loss contingency.

While the Appellees did not mention the <u>Montrose</u> decision specifically in their filings, they did include more general cautionary language about the risk of judicial findings on specialty-type insurance programs. They mentioned that court holdings could have an adverse effect on reserves and subsequent losses could occur as a result. The Appellants allege no facts to suggest that this general language was inadequate to provide warning of <u>Montrose</u>-related claims. Further, Appellants do not cite any legal authority to support the contention that specific mention of the <u>Montrose</u> decision was required by law.

As a result, we conclude that there is no error with the district court's finding that plaintiffs asserted no facts, other than mere conclusions, to show that Acceptance was under-reserved during the class period.

III.

After discovery, the Appellants sought leave to amend their Section 11 claim. The district court denied the Appellants' motion to amend because the Appellants had unduly delayed seeking amendment, the Appellants acted in bad faith during discovery, and the amendment would be futile. Generally, we review denial of leave to amend for abuse of discretion. Wheeler v. Missouri Highway & Transp. Comm'n, 348 F.3d 744, 753 (8th Cir. 2003). However, for the narrow issue of futility, we review de novo. In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 899-900 (8th Cir. 2002).

In making its argument that the district court erred regarding the denial of leave to amend, the Appellants largely repeat the same arguments they made in support of their Section 11 claim. Given that there are no substantive differences in the facts offered in the proposed amendment, we conclude that the amendment would be futile.

In the alternative, we find no error in the findings of delay and bad faith. Findings of bad faith and undue delay can support a denial of leave to amend. United States ex rel. Gaudineer, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir. 2001). Appellants offer no reason to find the district court was in error except to argue that the district court approved the relevant scheduling order. This, however, does not address the larger issue of bad faith, and we cannot find any argument to support the notion that the district court abused its discretion. As a result, we find no error by the district court in denying leave to amend.

IV.

The Appellants also argue that summary judgment was inappropriate because a reasonable jury could have found that the individual officer defendants knowingly or recklessly misled the shareholders in violation of Sections 10(b) and 20(a) of the

Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

Rule 10b-5 effectively tracks Section 10(b), so we discuss those claims in terms of Rule 10b-5. Our analysis applies to both claims. Rule 10b-5 makes it unlawful to "make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading" concerning a publicly traded company. Although not specified in Rule 10b-5, scienter of intentional misbehavior or recklessness is required. Florida St. Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 653 (8th Cir. 2001).

Because the Appellants' 10(b) and 10b-5 claims rely on the same basic material misstatements as described for the Section 11 claim, all of the arguments in the previous section apply here as well. There are, however, other reasons why the district court granted summary judgment for the defendants on the 10(b) and 10b-5 claims.

The district court found that the Appellants were unable to meet the scienter requirements of the relevant sections. The Appellants correctly assert that, in general, state of mind issues are to be decided by the jury. However, issues of scienter can be resolved as part of a summary judgment for the defendant if there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Further, issues of scienter under 10(b) and 10b-5 are subject to the more stringent pleading requirements of the Private Securities Litigation Reform Act (PSLRA). Under the PSLRA, the plaintiff must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Appellants argue that the district court failed to view all facts in a light most favorable to them on the scienter issue. The most significant piece of evidence

which the Appellants argue was undervalued by the district court was a statement recorded in notes by an employee, Wilkins, attributed to Mace that the "[p]ast problem was probably pressure for earnings. Sounded like we committed a sin in the past." The statement, however, was found to be inadmissible hearsay by the district court. Although the statement was a business record, the second level of hearsay, attributing the statement to Mace, did not fit into an exception.

The Appellants argue that the statement was an admission by a party opponent and/or falls under the general hearsay exception. However, the district court was well within its discretion in finding that the statement was not an admission to the facts in this case. The Appellants can only offer conjecture to connect the statement with the present case, and that is not sufficient for this court to override the judgment of the district court on this evidentiary issue.

The district court also found that the Appellants' expert affidavits were inadmissible on this issue. The standard of review for excluding expert testimony is abuse of discretion. General Electric Co. v. Joiner, 522 U.S. 136, 141 (1997). Applying Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the district court screened the expert testimony for relevance and reliability. The district court found that the testimony was unreliable because it was not supported by any methodology and not particularly helpful to the court. Ultimately, the district court felt the opinions were mere legal conclusions with no analytical reasoning or support.

The two experts took the shareholders' statements as true and did not review the record to see if the statements were supported. The opinions themselves were more or less legal conclusions about the facts of the case as presented to the experts by the shareholders. As a result, the expert opinions were merely opinions meant to substitute the judgment of the district court. S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc., 320 F.3d 838, 841 (8th Cir. 2003). When the expert opinions are little more than legal conclusions, a district court should not be held to

have abused its discretion by excluding such statements.  United States v. Ingle, 157 F.3d 1147, 1152 (8th Cir. 1998).

The other statements offered by the Appellants to prove scienter do not show knowing falsity about the reserves.  They do show concern about the Montrose decision, but they do not weigh on the issue of a failure to properly account for reserves.  Without evidence of intentional falsity, the Appellants' claim cannot survive summary judgment.

For the above reasons, as well as those cited in Section II, the district court was within its discretion when it granted the motion for summary judgment on the Section 10(b) and Rule 10b-5 claims.

V.

For the reasons stated above, we affirm the judgment of the district court.

_____