The ESTATE OF Scott W. THOMPSON, by the Personal Representatives, Randy W. Thompson and Vicky J. Thompson, and Randy W. Thompson and Vicky J. Thompson, individually, Plaintiffs,

v.

KAWASAKI HEAVY INDUSTRIES, LTD., and Kawasaki Motors Corp., U.S.A., Defendants.

No. C 11–4026–MWB.

United States District Court, N.D. Iowa, Western Division.

March 14, 2013.

Frederick W. James, The James Law Firm, PC, Des Moines, IA, Douglas Richard Bradley, Scott Eric Nutter, Shamberg, Johnson & Bergman, Chtd., Kansas City, MO, for Plaintiff.

Kevin M. Reynolds, Whitfield & Eddy, PLC, Des Moines, IA, Terrance M. Miller, Elizabeth Laudeman Moyo, Porter Wright Morris & Arthur LLP, Columbus, OH, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' POST-DEADLINE PRETRIAL MOTIONS**

MARK W. BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ........................................................... 299
   A. Factual Background ................................................ 299
   B. Procedural Background ............................................ 300

II. LEGAL ANALYSIS ...................................................... 300
   A. Standards For Pretrial Evidentiary Challenges ..................... 300
   B. Kawasaki's Challenges To Deposition Testimony Of Witnesses
      Available To Testify Live ........................................ 301
      1. Use of Mr. Okabe's deposition ................................. 301
        a. Additional factual background .............................. 301
        b. Arguments of the parties ................................... 301
        c. Analysis ................................................... 302
          i. "Discovery" deposition vs. "perpetuation of testimo-
            ny" deposition ......................................... 302
          ii. Rule 30(b)(6) and Rule 32 ............................. 303
          iii. Rule 32(a) and hearsay ................................ 306
          iv. Rule 32(a) and Rules 611 and 403 ..................... 308
      2. Use of Mr. Macklin's deposition testimony ..................... 309
        a. Additional factual background .............................. 309
        b. Arguments of the parties ................................... 310
        c. Analysis ................................................... 310
   C. The Thompsons' Motion To Exclude Litigation Testing Evidence ...... 313
      1. Additional factual background ................................. 313
      2. Arguments of the parties ...................................... 313
      3. Analysis ...................................................... 314

III. CONCLUSION .......................................................... 315

This diversity action under Iowa products liability law, arising from a motorcycle accident, is proceeding to trial on the plaintiffs' design defect claim and "loss of consortium" claims against the motorcycle manufacturer. Although I resolved all timely pretrial motions in a previous order, the parties have now filed additional pretrial motions—only one of which was specifically authorized—which I must now resolve.

## I. INTRODUCTION

### A. Factual Background

As I explained in my recent summary judgment ruling, see February 11, 2013, Memorandum Opinion And Order Regarding Defendants' Motions For Summary Judgment (docket no. 99), *published at Thompson v. Kawasaki Heavy Indus., Ltd.*, 922 F.Supp.2d 780, 2013 WL 494453 (N.D.Iowa Feb. 11, 2013), at about sunset on March 21, 2009, Scott Thompson was riding his 2007 Kawasaki Ninja ZX–10R motorcycle in a convoy with two friends on county road K–22 in Plymouth County, Iowa. One of Thompson's friends, Dave Lachioma, who was also riding a 2007 Ninja motorcycle, led the convoy, the other friend, Michael Welter, followed in his car, and Thompson brought up the rear on his motorcycle. While driving northbound on K–22, Thompson passed Welter, who was driving at 60 to 65 mph. A few seconds after Thompson passed him, Welter observed the taillight of Thompson's motorcycle wobble from side to side. Although Welter observed that it looked like Thompson was regaining control of his motorcycle, Thompson was tossed from the motorcycle, slid on his back, feet first, across the highway, and landed in a ditch on the west side of the highway. The motorcycle continued upright in the northbound lane for another several hundred feet, before exiting the highway on the east side. As a result of the accident, Thompson suffered a burst fracture at the T3–T4 verte-

brae, causing paralysis below that level. Thompson died on December 25, 2011.

### B. Procedural Background

Plaintiffs Randy and Vicky Thompson, the parents of Scott Thompson, brought a "design defect" claim as representatives of Scott Thompson's estate and their own claims for "loss of consortium" with their adult child as the result of his death. The defendants are Kawasaki Heavy Industries, Ltd. (KHI), a Japanese company that designed and manufactured the 2007 Ninja ZX–10R motorcycle, and Kawasaki Motors Corp., U.S.A. (KMC), a Delaware corporation that marketed and sold the 2007 Ninja ZX–10R motorcycle wholesale to independent dealers in the United States. I will refer to the defendants, collectively and in the singular, as "Kawasaki."

The Thompsons allege that the motorcycle that Scott Thompson was riding was defectively designed, because the motorcycle, including the steering damper on the motorcycle, provided insufficient damping. The Thompsons allege that the insufficient damping caused the motorcycle to become unstable, which, in turn, caused Scott Thompson to lose control of and be ejected from the motorcycle. Kawasaki denies that the motorcycle was defectively designed, because it argues that the motorcycle provided sufficient damping force. Kawasaki also denies that the allegedly defectively-designed motorcycle was the cause of Scott Thompson's accident or his death. Kawasaki contends, further, that Scott Thompson was at fault for the motorcycle accident. A jury trial in this matter is currently set to begin on March 18, 2013.

In an extensive Memorandum Opinion And Order Regarding The Parties' Pretrial Motions (docket no. 119), filed on February 25, 2013, under seal until ten days after completion of the trial, I resolved all of the pretrial motions filed by the parties prior to their January 24, 2013, deadline for such motions. At a Pretrial Conference on February 21, 2013, however, I granted Kawasaki until February 26, 2013, to file a motion to limit the use of the Rule 30(b)(6) deposition of a witness, Mr. Okabe. I granted the Thompsons to and including February 28, 2013, to file a response to that motion, but later extended their deadline, by e-mail, to March 4, 2013.

Kawasaki's anticipated Motion In Limine To Limit The Use And To Exclude Certain Portions Of The Deposition Of Yasuhisa Okabe (docket no. 120), filed on February 26, 2013, was the first, but not the only, post-deadline pretrial motion.[1] On February 28, 2013, the Thompsons filed an unanticipated Motion To Exclude Litigation Testing Of Kawasaki Experts Ron Robbins And Rick Oxton (docket no. 122), without prior leave of court. On March 6, 2013, Kawasaki also filed an unanticipated Motion In Limine To Limit The Use And To Exclude Certain Portions Of The Deposition Of Lars Macklin (docket no. 124), also without prior leave of court.[2] The three post-deadline motions were all duly resisted. See Plaintiffs' Brief In Response And Resistance To Kawasaki's Motion In Limine To Limit The Use And To Exclude Certain Portions Of The Deposition Of Yasuhisa Okabe (docket no. 123) (filed March 4, 2013); Defendants' Response To Plaintiffs' Motion To Exclude Litigation Testing Of Kawasaki Experts Ron Robbins And Rick Oxton (docket no. 125) (filed March 8, 2013); Plaintiffs' Brief In Response And Resistance To Kawasaki's Motion In Limine To Limit The Use And To Exclude Certain Portions Of The Deposition Of Lars Macklin (docket no. 126) (filed March 8, 2013).

## II. LEGAL ANALYSIS

### A. Standards For Pretrial Evidentiary Challenges

The post-deadline pretrial motions are all motions in limine challenging the admissibility of various categories of evidence. As a

---

1. On February 28, 2013, Kawasaki filed a Motion To Clarify P. 25 Of Court's Ruling On Pretrial Motions (docket no. 121), concerning one category of evidence at issue in my February 25, 2013, ruling, but I have already addressed that motion in a separate ruling. See Order (docket no. 130) (filed March 11, 2013).

2. I will determine, below, whether or not the timing of or the lack of authorization for the unanticipated motions has any impact on their disposition.

preliminary matter, I note that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning ... the admissibility of evidence shall be determined by the court...." FED.R.EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.,* Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED.R.EVID. 102. Notwithstanding that two of the three post-deadline pretrial motions were untimely and unauthorized, I conclude that preliminary determination of the admissibility of the evidence put at issue in the parties' post-deadline pretrial motions will likely serve the ends of a fair and expeditious presentation of issues to the jury. Therefore, I will consider all three motions on their merits.

## B. Kawasaki's Challenges To Deposition Testimony Of Witnesses Available To Testify Live

Both Kawasaki's anticipated post-deadline motion and its unanticipated post-deadline motion challenge the Thompsons' use, in their case-in-chief, of deposition testimony of witnesses that Kawasaki intends to call "live" at the trial. I will consider, in turn, whether or not the Thompsons can use either of those depositions in their case-in-chief.

### 1. Use of Mr. Okabe's deposition
#### a. Additional factual background

On April 9, 2012, Yasuhisa Okabe, who is identified by Kawasaki in the first of its post-deadline motions as a research and development officer at Kawasaki Heavy Industries, Ltd., (KHI), testified at a videotaped deposition as Kawasaki's Rule 30(b)(6) designee. Kawasaki attached excerpts from his Rule 30(b)(6) deposition to its motion, and the Thompsons attached his entire deposition, with the portions of the deposition that they intended to use at trial highlighted. According to the Final Pretrial Order, Mr. Okabe will be offered by the Thompsons as a witness at trial, either by videotaped deposition or live, to testify about the "[s]ubject motorcycle and steering damping system." Final Pretrial Order (docket no. 117), 5. According to the Final Pretrial Order, he will also be offered by Kawasaki as an expert witness, through live testimony, "regarding the design, testing and development of the Kawasaki Ninja ZX–10R motorcycle including but not limited to the incorporation of the Ohlins adjustable steering damper as original equipment." *Id.* at 6.

#### b. Arguments of the parties

Kawasaki contends that the Thompsons intend to introduce almost the entirety of Mr. Okabe's videotaped deposition, piece-by-piece, during their case-in-chief. However, Kawasaki contends that the Thompsons should not be allowed to do so, because Mr. Okabe will be available to testify live at trial, and his "discovery" deposition should only be used to the extent necessary for cross-examination and impeachment.

More specifically, Kawasaki argues that I should prohibit use of Mr. Okabe's deposition testimony, through an interpreter, in the Thompsons' case-in-chief, as contrary to Rules 611 and 403 of the Federal Rules of Evidence, because allowing such use would be cumulative, wasteful, and repetitive. This is so, Kawasaki argues, because the jury would be required to endure presentation of Mr. Okabe's deposition, during which he testified through an interpreter, then forced listen to Mr. Okabe repeat himself live, again with the aid of an interpreter, when Kawasaki calls him to testify. Kawasaki also argues that such a tactic is not authorized by Rule 32(a)(3) of the Federal Rules of Civil Procedure, even though a Rule 30(b)(6) deposition may be used "for any purpose," because Rule 32 is still subject to Rules 611 and 403. Kawasaki contends that the Thompsons cannot be prejudiced by a prohibition on their use of the deposition in their case-in-chief, where they will have the opportunity to use it for cross-examination and impeachment in response to Mr. Okabe's live testimony.

Kawasaki also argues that the Thompsons cannot rely on Rule 801(d)(2) of the Federal

Rules of Evidence, which defines a party-opponent's admissions as "not hearsay," because the Thompsons have not demonstrated that any admission that Mr. Okabe may have made, in his capacity as a Rule 30(b)(6) designee, was an admission as to the facts in the case and connected to the case by more than conjecture. Yet, even if the Thompsons can make such a showing, Kawasaki argues that Rule 403 still empowers the court to exclude the admissions in the deposition during their case-in-chief as needlessly cumulative of live testimony.

Finally, Kawasaki argues that two specific portions of Mr. Okabe's deposition testimony are inadmissible hearsay. The first portion is his reference to an alleged customer complaint regarding the steering damper on a 2006 Kawasaki Ninja ZX–10R motorcycle. Kawasaki argues that this customer's complaint is an out-of-court statement being offered for its truth—that the steering damper was deficient—and no exception applies to that statement, even if Mr. Okabe's repetition of that hearsay statement is admissible as an admission of a party-opponent. The second portion that Kawasaki argues is inadmissible hearsay is Mr. Okabe's reference to an e-mail communication from Johnny Braster, an employee of Ohlins, the maker of the steering damper, regarding Ohlins's testing of two steering dampers for the Kawasaki Ninja ZX–10R motorcycle and Ohlins's recommendation as to which steering damper to use on the 2008 Kawasaki Ninja ZX–10R motorcycle. Kawasaki argues that this testimony is inadmissible hearsay, because Mr. Braster's statement is being offered for its truth—that Ohlins recommended a certain steering damper—and no exception applies to allow its admission. Kawasaki also points out that Mr. Braster's statement is not admissible as an admission of a party-opponent, because Ohlins has been dismissed from this action.

The Thompsons counter that Rule 32 allows them to use Mr. Okabe's Rule 30(b)(6) deposition "for any purpose." They assert that Kawasaki's "waste of time" argument is strange, because nothing compels Kawasaki to call Mr. Okabe and ask him the same questions that he has already been asked and answered in his videotaped deposition. The Thompsons argue that it would be Kawa-saki's repetition of such testimony that would be a waste of time, not their initial introduction of such testimony via deposition in their case-in-chief. The Thompsons also argue that the deposition excerpts that they have designated do not involve any mere "conjecture" about a connection between Mr. Okabe's admissions, as Kawasaki's Rule 30(b)(6) designee, and the design, development, and testing of the subject motorcycle and steering damper, but address directly those very matters at issue in the case. Thus, they argue that the deposition is admissible as an admission of a party opponent pursuant to Rule 802(b)(2)(A), (C), and (D), if the deposition must meet such a requirement, where a Rule 30(b)(6) deposition can be used, pursuant to Rule 32, "for any purpose."

As to Kawasaki's hearsay objections to Mr. Okabe's deposition testimony about a customer complaint, the Thompsons argue that evidence of customer complaints can be offered for various non-hearsay purposes, such as to prove the defendant's notice of defects, the defendant's ability to remedy known defects, the magnitude of the danger involved, the lack of safety for intended use, and causation. The Thompsons argue that any possibility that jurors might use such evidence improperly, that is, for its truth, can be addressed in a limiting instruction. Similarly, as to Mr. Okabe's deposition testimony about Mr. Braster's statements, the Thompsons argue that this evidence is also admissible for non-hearsay purposes, such as to demonstrate notice of a defect to Kawasaki and the declarant's then-existing state of mind, because it explains why Mr. Braster recommended that Kawasaki use the 2006 steering damper, not the 2007 steering damper, on the 2008 model of the motorcycle.

### c. Analysis

#### i. "Discovery" deposition vs. "perpetuation of testimony" deposition

Kawasaki states, but does not strongly push, the argument that Mr. Okabe's Rule 30(b)(6) deposition should not be used in the Thompsons' case-in-chief, because it was a "discovery" deposition, not a deposition intended to perpetuate testimony. This argument is a non-starter with me, as I explained

in *Niver v. Travelers Indemnity Co. of Illinois*, 430 F.Supp.2d 852 (N.D.Iowa 2006):

> Nor is the court persuaded that whether the depositions were noticed as "discovery" depositions or "depositions to perpetuate trial testimony" is determinative, because "[n]either the Rules of Civil Procedure nor the Rules of Evidence make any distinction between discovery depositions and depositions for use at trial." *Henkel v. XIM Prods., Inc.*, 133 F.R.D. 556, 557 (D.Minn. 1991). Rather, the court finds that what is controlling is Rule 32 of the Federal Rules of Civil Procedure, concerning use of "depositions" in court proceedings, and case law construing that rule.

*Niver*, 430 F.Supp.2d at 863. Therefore, as in *Niver*, I turn to Rule 32 as the key to resolving the parties' dispute about the admissibility of Mr. Okabe's Rule 30(b)(6) deposition in the Thompsons' case-in-chief.

### ii. Rule 30(b)(6) and Rule 32

Rule 30(b)(6) of the Federal Rules of Civil Procedure, the rule pursuant to which the Thompsons took Mr. Okabe's deposition, provides, as follows:

> (6) **Notice or Subpoena Directed to an Organization.** In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

FED.R.CIV.P. 30(b)(6).

The Fourth Circuit Court of Appeals has observed that the "general purpose" of a Rule 30(b)(6) deposition is to "permit[ ] the examining party to discover the corporation's position via a witness designated by the corporation to testify on its behalf."

*Rosenruist–Gestao E Servicos LDA v. Virgin Enters. Ltd.*, 511 F.3d 437, 440 n. 2 (4th Cir.2007); *see also Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir.2000) ("[W]e believe that the purpose behind Rule 30(b)(6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf." (citing FED.R.CIV.P. 30, advisory committee's)). As the Fifth Circuit Court of Appeals has explained,

> "Obviously it is not literally possible to take the deposition of a corporation; instead, ... the information sought must be obtained from natural persons who can speak for the corporation." [8A CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2103, 36–37 (2d ed.1994).] Thus, a rule 30(b)(6) designee does not give his personal opinions, but presents the corporation's "position" on the topic. [*United States v.*] *Taylor*, 166 F.R.D. [356,] 361 [ (M.D.N.C.1996) ]. When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions. [*Lapenna v. Upjohn Co.*, 110 F.R.D. 15, 25 (E.D.Pa.1986) (citing 4 J. MOORE, J. LUCAS & G. GROTHEER, MOORE'S FEDERAL PRACTICE ¶ 26.56[3], at 142–43 (2d ed.1984)); *see also Resolution Trust Corp. v. S. Union*, 985 F.2d 196, 197 (5th Cir.1993) ("When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent.").] If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute. [*Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C.1989) (noting that even where defendant in good faith thought deponent would satisfy the deposition notice, it had a duty to substitute another person once the deficiency of its designation be-

came apparent during the course of the deposition).]

*Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir.2006) (footnotes omitted, citations inserted).

Nevertheless, the Seventh Circuit Court of Appeals has concluded that the testimony of a Rule 30(b)(6) witness does not necessarily bind the corporation:

> One sentence of the Rule provides, "The persons so designated shall testify as to matters known or reasonably available to the organization." In the light of that sentence, [one defendant] apparently construes the Rule as absolutely binding a corporate party to its designee's recollection unless the corporation shows that contrary information was not known to it or was inaccessible. Nothing in the advisory committee notes indicates that the Rule goes so far. [That defendant] cites *Rainey v. American Forest & Paper Ass'n, Inc.,* 26 F.Supp.2d 82, 94 (D.D.C.1998), in support, but two other district courts have reached different conclusions and we think theirs is the sounder view. *See Indus. Hard Chrome, Ltd. v. Hetran, Inc.,* 92 F.Supp.2d 786, 791 (N.D.Ill.2000) ("testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes"); *United States v. Taylor,* 166 F.R.D. 356, 362 n. 6 (M.D.N.C.1996) (testimony of Rule 30(b)(6) designee does not bind corporation in sense of judicial admission).

*A.I. Credit Corp. v. Legion Ins. Co.,* 265 F.3d 630, 637 (7th Cir.2001).

Other courts disagree. As one court explained, rejecting an argument that a Rule 30(b)(6) deposition was duplicative of discovery already obtained through depositions of corporate directors and employees,

> [A]s plaintiff notes, this argument overlooks the basic purpose of a [Rule] 30(b)(6) deposition.... *The testimony provided by a corporate representative at a [Rule] 30(b)(6) deposition binds the corporation.* This is quite unlike a deposition of an employee of the corporation, which is little more than that individual employee's view of the case and is not binding on the corporation. Even if the substance of the information ultimately provided mirrors

that of the testimony given by Sprint's former directors and employees, plaintiff still is entitled to tie down the definitive positions of Sprint itself, rather than that of the individuals who work for Sprint.....

*New Jersey v. Sprint Corp.,* No. 03–2071–JWL, 2010 WL 610671, *1 (D.Kan. Feb. 19, 2010) (emphasis added; footnote omitted); *see also Cipriani v. Dick's Sporting Goods, Inc.,* No. 3:12 CV 910(JBA), 2012 WL 5869818, *2 (D.Conn. Nov. 19, 2012) (quoting *Sprint,* 2010 WL 610671 at *1); *Aldridge v. Lake Cnty. Sheriff's Office,* No. 11 C 3041, 2012 WL 3023340, *3 (N.D.Ill. July 24, 2012) ("[T]he purpose of a Rule 30(b)(6) witness is to present the organization's position on the listed topic and that person, then, provides binding answers on behalf of the organization." (citing *QBE Ins. Corp. v. Jorda Enters., Inc.,* 277 F.R.D. 676, 688 (S.D.Fla. 2012))).

I find the latter position—that statements in a Rule 30(b)(6) deposition are binding on the corporation—to be the one most consistent with the purpose of the rule, which is to "permit[ ] the examining party to discover the corporation's position via a witness designated by the corporation to testify on its behalf." *Rosenruist–Gestao E Servicos LDA,* 511 F.3d at 440 n. 2. It is all the more appropriate to bind a corporation to the testimony of its Rule 30(b)(6) designee, where the corporation itself selects the deponent who will speak for it and has the opportunity to prepare the deponent to testify to matters beyond his or her personal experience. *See* FED.R.CIV.P. 30(b)(6); *Brazos River Auth.,* 469 F.3d at 433. Thus, in my view, some extraordinary explanation must be required before a corporation is allowed to retreat from binding admissions in the testimony of its Rule 30(b)(6) designee. *Contra A.I. Credit Corp.,* 265 F.3d at 637.

■ What is of particular interest here is the interplay between Rule 30(b)(6) and Rule 32(a)(3) of the Federal Rules of Civil Procedure (formerly Rule 32(a)(2), until the 2007 amendments). Rule 32(a)(3) addresses the use of a Rule 30(b)(6) deposition, as follows:

> **(3) Deposition of Party, Agent, or Designee.** An *adverse* party may use *for any purpose* the deposition of a party or

anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4). FED.R.CIV.P. 32(a)(3). As the Eighth Circuit Court of Appeals explained, some time ago, "As a district court has broad discretion in handling these matters [concerning use of depositions pursuant to Rule 32], [the appellate court is] hesitant to reverse 'unless, in the totality of the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness....'" *Lear v. Equitable Life Assur. Soc'y of U.S.,* 798 F.2d 1128, 1135 (8th Cir.1986) (quoting *Voegeli v. Lewis,* 568 F.2d 89, 96 (8th Cir. 1977), and citing *Phil Crowley Steel Corp. v. Macomber, Inc.,* 601 F.2d 342, 344 (8th Cir. 1979)).

As the Eighth Circuit Court of Appeals also explained, also some time ago, Rule 32 deals with "attempts to preclude the use of deposition testimony at trial." *Wilmington v. J.I. Case Co.,* 793 F.2d 909, 921 (8th Cir. 1986). Thus, the rule "permits a deposition to be used in lieu of live testimony under certain conditions." *Starr v. J. Hacker Co., Inc.,* 688 F.2d 78, 81 (8th Cir.1982). One such condition is that the deposition is that of a Rule 30(b)(6) designee. FED.R.CIV.P. 32(a)(3). Thus, Rule 32(a)(3), by its plain terms, appears to foreclose Kawasaki's attempts to preclude the use of Rule 30(b)(6) deposition testimony at trial, simply because the deponent will be available to testify live, because Rule 32(a)(3) expressly authorizes the use of a Rule 30(b)(6) deposition "for any purpose." FED.R.CIV.P. 32(a)(3).

That has not been the end of the matter for the courts, however. For example, the Fifth Circuit Court of Appeals has observed,

[T]hough Federal Rule of Civil Procedure 32(a)(2) "permits a party to introduce the deposition of an adversary as part of his substantive proof regardless of the adversary's availability to testify at trial," *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 308 (5th Cir.1978), district courts are reluctant to allow the reading into evidence of the rule 30(b)(6) deposition if the witness is available to testify at trial, and such exclusion is usually deemed harmless error.

*Brazos River Auth.,* 469 F.3d at 434 (footnotes omitted) (citing, as an example, *Jack-son v. Chevron Chem. Co.,* 679 F.2d 463, 466 (5th Cir.1982), which noted that the deposition contained no information that the witness's "live testimony could not supply"); *cf. Williams v. Jackson,* No. 2:07–cv–00110–JTK, 2011 WL 867528, *2 (W.D.Ark. March 14, 2011) (following *Brazos River,* concerning Rule 32(a)(3), as to Rule 30(b)(6) deponents by rejecting, "in the interest of judicial efficiency," the plaintiff's request to introduce designated portions of the defendants' depositions at trial in his case-in-chief, pursuant to Rule 32(a)(3), notwithstanding that the defendants would be available to testify at trial, and, therefore, only allowing the plaintiff to call the defendants as live witnesses in his case-in-chief and to use portions of their depositions for impeachment purposes, if necessary).

More consistent with the plain meaning of the "for any purpose" language of Rule 32(a)(3), in my view, are cases overruling objections to the use of Rule 30(b)(6) depositions at trial, notwithstanding the availability of the Rule 30(6)(6) witness to testify live. For example, one district court observed,

Rule 32(a)(3) (formerly Rule 32(a)(2) until the 2007 amendments) provides broadly: "An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." (Emphasis added). *The rule is to be liberally construed, and though the court "has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand, [ ] it may not refuse to allow the deposition to be used merely because the party is available to testify in person."* 8A Wright et al., *Federal Practice and Procedure* § 2145 (2d ed.2008); *see also Superior Diving Co. v. Watts,* 2008 WL 533804, at *2 (E.D.La. Feb.22, 2008) (Rule 32(a)(3) "allows a party's deposition to be used by an adverse party regardless of the presence or absence of the deponent at the hearing or trial and regardless of whether the deponent is available to testify or has testified there"); *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 308 (5th Cir.1978) (Rule 32(a)(3) "permits a party to intro-

duce the deposition of an adversary as part of his substantive proof regardless of the adversary's availability to testify at trial"); *Cmty. Counseling [Counselling] Serv., Inc. v. Reilly,* 317 F.2d 239, 243 (4th Cir.1963) (deposition "statements of a party which are inconsistent with his claim in litigation are substantively admissible against him"); *Fenstermacher v. Philadelphia Nat'l Bank,* 493 F.2d 333, 338 (3rd Cir.1973) [ (3rd Cir.1974) ]; *Zimmerman v. Safeway Stores, Inc.,* 410 F.2d 1041, 1044 n. 5 (D.C.Cir.1969); *Patsy's Italian Rest., Inc. v. Banas,* 508 F.Supp.2d 194, 200 n. 3 (E.D.N.Y.2007).

*Northern Ins. Co. of N.Y. v. Albin Mfg., Inc.,* C.A. No. 06–190–S, 2008 WL 3285852, *3 n. 4 (D.R.I. Aug. 8, 2008) (emphasis added); *see also, e.g., SanDisk Corp. v. Kingston Tech. Co., Inc.,* 863 F.Supp.2d 815, 817–18 (W.D.Wis.2012) (overruling both sides' objections to the submission of deposition testimony in a bench trial from any individual who was not unavailable to testify in person within the meaning of Rule 32 or who testified live at the trial, because the court concluded "these individuals were officers and designees under Fed.R.Civ.P. 30(b)(6), which means that under Rule 32(a)(3) an adverse party may use their deposition testimony for any purpose, regardless of their availability" (citing *Fey v. Walston & Co., Inc.,* 493 F.2d 1036, 1046 (7th Cir.1974))).

In *Niver v. Travelers Indem. Co. of Illinois,* 430 F.Supp.2d 852 (N.D.Iowa 2006), I concluded that, until the plaintiff showed that a deposition fell within then-Rule 32(a)(2), now Rule 32(a)(3), I would not allow the plaintiff to use excerpts of videotaped depositions of a witness in his case-in-chief. 430 F.Supp.2d at 865–66. Here, however, the Thompsons have made the necessary showing that Mr. Okabe testified as Kawasaki's Rule 30(b)(6) designee, so that Rule 32(a)(3) authorizes their use of his deposition in their case-in-chief. Because those requirements have been met here, I "ha[ve] discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand," but I "may not refuse to allow the deposition to be used merely because the party is available to testify in person." *Northern Ins. Co. of N.Y.,* 2008 WL 3285852 at *3 n. 4 (internal quotation marks and citations omitted). Kawasaki's objection to use of Mr. Okabe's Rule 30(b)(6) deposition in the Thompsons' case-in-chief is overruled, to the extent that Kawasaki asserts that Rule 32(a)(3) does not authorize such use.

### iii. *Rule 32(a) and hearsay*

Kawasaki argues, however, that I can exclude Rule 30(b)(6) deposition testimony by Mr. Okabe from the Thompsons' case-in-chief on various grounds, among them that the deposition is hearsay not properly shown to be admissions of a party-opponent. I am not convinced by the argument that Mr. Okabe's deposition testimony must satisfy Rule 801(d)(2) requirements for admissions of a party-opponent, *as well as* Rule 32(a)(3) requirements for admission.

Because Rule 32(a) specifically governs the use of depositions at trial, where certain conditions are met, *see Starr,* 688 F.2d at 81, courts have concluded that it provides a "freestanding" hearsay exception for use of the deponent's out-of-court statements:

Under Rule 802, hearsay is admissible where allowed by the Federal Rules of Evidence, or "by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R.Evid. 802. Rule 32(a)(4)(B) is one of these "other rules." *See* Fed.R.Evid. 802 advisory committee's note (identifying Rule 32 as one of the "other rules"); Fed. R.Civ.P. 32 advisory committee's note (explaining that new Rule 32(a) was intended to "eliminate[ ] the possibility of certain technical hearsay objections which are based, not on the contents of deponent's testimony, but on his absence from court"). *Our sister circuits have recognized that Rule 32(a) is an independent exception to the hearsay rule. See Ueland v. United States,* 291 F.3d 993, 996 (7th Cir.2002) ("Rule 32(a), as a freestanding exception to the hearsay rule, is one of the 'other rules' to which Fed.R.Evid. 802 refers. Evidence authorized by Rule 32(a) cannot be excluded as hearsay, unless it would be inadmissible even if delivered in court."); *Angelo v. Armstrong World Indus., Inc.,* 11 F.3d 957, 962–63 (10th Cir.1993) ("Deposition testimony is normally inadmissible

hearsay, but Fed.R.Civ.P. 32(a) creates an exception to the hearsay rules."); *S. Indiana Broadcasting, Ltd. v. FCC*, 935 F.2d 1340, 1341–42 (D.C.Cir.1991) (recognizing that Fed.R.Civ.P. 32(a) creates an exception to the hearsay rule); *United States v. Vespe*, 868 F.2d 1328, 1339 (3d Cir.1989) (Rule 32(a)(3)(B) "constitutes an independent exception to the hearsay rule"); *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 204 & n. 2 (1st Cir.1988) (explaining that Rule 32(a)(3)(B) "is more permissive than Federal Rule of Evidence 804(a)(5)").

*Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 914–15 (9th Cir.2008) (emphasis added) (adopting this position).

Kawasaki misreads my decision in *Niver* as making "clear" that a plaintiff's failure to make a showing that a Rule 30(b)(6) deponent's statements constitute "admissions to the facts of the case," within the meaning of Rule 801(d)(2) regarding admissions of a party-opponent, precludes admission of any portion of such a deposition in the Thompsons' case-in-chief (or at all). In *Niver*, I did explain that excerpts of a videotaped deposition could not be used in the plaintiff's case-in-chief, on the ground that they were admissions of a party-opponent, pursuant to Rule 801(d)(2), unless the plaintiff showed that "the statements are 'admissions,' that is 'admission[s] to the facts in this case,' and connected to the case by more than conjecture.'" *Niver*, 430 F.Supp.2d at 865 (citing *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 905 (8th Cir.2005)). I noted, however, that, if the plaintiff made the required showing, he would be allowed to use the excerpts. *Id.* I simply concluded that, in that case, because no such showing had been made pretrial, I could not then determine whether the excerpts of the videotaped depositions were admissible pursuant to Rule 32(a)(1). *Id.*

More importantly, however, the admissibility of the deposition pursuant to Rule 801(d)(2), as an admission of a party-opponent, in *Niver* was an *alternative* argument. I also noted that then-Rule 32(a)(2), now Rule 32(a)(3), regarding admission of a Rule 30(b)(6) "would permit broader use of the deposition excerpts than Rule 32(a)(1)," *see id.* at 865, where former-Rule 32(a)(1), now

Rule 32(a)(1)(B), allows use of depositions for purposes of impeachment and for purposes permitted by the Federal Rules of Evidence—the context in which the admissibility of the statements of the deponent as admissions of a party-opponent pursuant to Rule 801(d)(2) appeared. *See id.* at 864–65.

Thus, if the Thompsons meet the requirements for admissibility of Mr. Okabe's Rule 30(b)(6) deposition pursuant to Rule 32(a)(3), the Thompsons are not required to demonstrate that Mr. Okabe's statements in his Rule 30(b)(6) deposition *also* meet the requirements of Rule 801(d)(2) for the statements to be admitted as admissions of a party-opponent. I concluded, above, that the Thompsons have met the Rule 32(a)(3) requirements for admission of Mr. Okabe's Rule 30(b)(6) deposition in their case-in-chief.

Although the Thompsons do not *have to* meet Rule 801(d)(2) requirements to use Mr. Okabe's Rule 30(b)(6) deposition in their case-in-chief, they have, in fact, done so in this case. "Rule 801(d)(2) expressly provides that an admission by a party opponent is not hearsay when the statement is 'offered against a party and is . . . the party's own statement, in either an individual or a representative capacity.'" *United States v. Heppner*, 519 F.3d 744, 751 (8th Cir.2008) (quoting the rule); *United States v. McPike*, 512 F.3d 1052, 1055 (8th Cir.2008). As I explained in *Niver*, to be admissible as admissions of a party-opponent, pursuant to Rule 801(d)(2), the statements must be " 'admission[s] to the facts in this case,' and connected to the case by more than conjecture." *Niver*, 430 F.Supp.2d at 865 (citing *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 905 (8th Cir.2005)). In its Motion In Limine, Kawasaki did not identify a single statement in Mr. Okabe's deposition that was ostensibly an "admission," but was not "to the facts in the case" or not connected to the case by more than conjecture. On the other hand, in their Resistance and in the highlighted portions of Mr. Okabe's deposition, the Thompsons have shown that Mr. Okabe's Rule 30(b)(6) statements are "admissions to the facts in the case," concerning the development and performance of the 2007 Ninja ZX–10R motorcycle and the steering damper

in it, and those matters are plainly at issue in the case, so that they are connected to it by more than conjecture. *Id.* This objection to the use of Mr. Okabe's Rule 30(b)(6) deposition in the Thompsons' case-in-chief on the ground that the deposition is hearsay not within a Rule 801(d)(2) exception is, consequently, overruled.

Although Rule 32(a)(3) provides a hearsay exception for a Rule 30(b)(6) deposition *itself, see Nationwide Life Ins. Co. v. Richards*, 541 F.3d at 914–15, Rule 32(a)(3) does *not* authorize a party to present, via a Rule 30(b)(6) deposition, testimony about matters that are hearsay, in the absence of a hearsay exception. *See Brazos River Auth.*, 469 F.3d at 434. In short, Rule 32(a)(3) cures only one layer of such "double hearsay" or "hearsay within hearsay" testimony within the meaning of Rule 805 of the Federal Rules of Evidence, the "deponent" layer, but it does not cure the "declarant" layer. Kawasaki asserts that two of the statements that Mr. Okabe reported in his Rule 30(b)(6) deposition were inadmissible hearsay, because they were offered for their truth. Those reported statements were a customer complaint and an e-mail by Mr. Braster from Ohlins about steering dampers for the 2008 Ninja ZX–10R motorcycle. Kawasaki's contention that these reported statements are necessarily hearsay fails, however.

As the Thompsons argue, reports of a customer's complaint and a part supplier's engineer's recommendation about an appropriate part are not necessarily offered for their truth, but may be offered to prove the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation. *Lovett ex rel. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1081 (8th Cir.2000); *accord Arabian Agric. Servs. Co. v. Chief Indus., Inc.*, 309 F.3d 479, 485 (8th Cir.2002) (citing *Lovett*, 201 F.3d at 1081). The part's supplier's engineer's statement may also be admissible under the "state of mind" exception in Rule 803(2), as relating to the declarant's "state of mind" relating to the recommendation. Moreover, any concerns that the reported statements might be taken for their truth can be alleviated by a limiting instruction on the proper uses of the reported statements. *See United States v. Cowling*, 648 F.3d 690, 699 (8th Cir.2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d 757, 761 (8th Cir.2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir.2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED.R.EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

Therefore, Kawasaki's "hearsay" objections to use of Mr. Okabe's Rule 30(b)(6) deposition in the Thompsons' case-in-chief are overruled.

### iv. *Rule 32(a) and Rules 611 and 403*

Finally, Kawasaki argues that, even if Mr. Okabe's Rule 30(b)(6) deposition testimony is otherwise admissible in the Thompsons' case-in-chief, I should nevertheless exclude it pursuant to Rules 611 and 403 of the Federal Rules of Evidence. There is some merit to Kawasaki's concerns, but not enough to make a blanket exclusion of this deposition testimony from the Thompsons' case-in-chief or to limit it to use only for impeachment.

As explained in more detail in subsection *ii.* above, "[b]y virtue of [Rule 32(a)(3) ], [an adverse party] is not required to call the witnesses 'live' in its case and use the depositions merely for impeachment purposes." *JamSports Entm't, L.L.C. v. Paradama Prods., Inc.*, No. 02 C 2298, 2005 WL 14917, *4 (N.D.Ill. Jan. 3, 2005) (explaining that this conclusion follows from the "for any purpose" language of then Rule 32(a)(2)). Nevertheless, as Kawasaki argues here, "Rule 32(a)[ (3) ] does not abrogate the Court's authority to regulate the mode and order of interrogating witnesses, *see* Fed.R.Evid. 611(a), or its authority to exclude evidence whose probative value is outweighed by, among other things, its needlessly cumulative nature, *see* Fed.R.Evid. 403." *Id.*

Exercising this authority, the court in *JamSports* ruled as follows:

If [the plaintiff] elects to proceed in its case by using deposition excerpts rather than by calling witnesses live, it will be required to provide, in advance of trial, a designation of the testimony to be offered, and an accurate statement of how long each videotaped presentation will take. The Court will carefully examine the designated testimony for cumulativeness. In addition, if [the plaintiff] presents the testimony of such a witness by deposition in its case in chief, and the witness is later called by the defense, [the plaintiff] cannot expect that it will be able to reprise its use of the same deposition excerpts a second time for "impeachment" purposes.

*JamSports*, 2005 WL 14917 at *4. The Thompsons certainly *can* use Mr. Okabe's Rule 30(b)(6) deposition in their case in chief. The Thompsons have provided designations of Mr. Okabe's Rule 30(b)(6) videotaped deposition, Kawasaki has made its objections, and I have ruled upon them. *Id.* Here, it is Kawasaki's "cumulativeness" or "waste of time" argument, pursuant to Rule 611 and Rule 403, that puts the shoe on the wrong foot: It would be Kawasaki's use of Mr. Okabe's live testimony to rehash matters already addressed in the portions of his Rule 30(b)(6) videotaped deposition that will be played to the jury that would be "cumulative" or a "waste of time" or cause "undue delay." *See* FED.R.EVID. 403; FED.R.EVID. 611(a). While Rule 611 may authorize me to compel the Thompsons to rely on Mr. Okabe's live testimony in the first instance, and I acknowledge that courts, including the Eighth Circuit Court of Appeals, have held that doing so would not prejudice them, *see Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 990 (8th Cir.1999), I conclude that it is inappropriate for me to dictate the manner in which they use Mr. Okabe's deposition or live testimony. More, specifically, it is inappropriate for me to relegate the use of Mr. Okabe's Rule 30(b)(6) deposition to impeachment. I concluded, above, that his deposition testimony is binding on Kawasaki, and that some extraordinary explanation must be required before Kawasaki is allowed to retreat from binding admissions in the testimony of its Rule 30(b)(6) designee. I now add that Kawasaki should not have the opportunity to redact Rule 30(b)(6) deposition testimony, first, with live testimony, but may only attempt to do so in presentation of live testimony after the deposition has been presented.

Nevertheless, I agree with the concerns expressed by the court in *JamSports* about using deposition testimony in lieu of live testimony, when live testimony is also available. The court in *JamSports* first observed,

All things considered, [the plaintiff] might be better advised to call the witnesses in its case in chief and use the deposition testimony as admissions and as otherwise appropriate during its examination.

*JamSports*, 2005 WL 14917 at *4. In a footnote, the court further sharpened its cautions to the plaintiff about use of depositions, as follows:

The Court strongly urges [the plaintiff] to carefully think through its strategy. In the Court's experience, the use of a deposition, even a videotaped deposition, tends to take a good deal of the "punch" out of the presentation of evidence, even with regard to an adverse witness, and risks boring the jury.

*JamSports*, 2005 WL 14917 at *4 n. 2. Thus, while I will not preclude the Thompsons from using Mr. Okabe's Rule 30(b)(6) deposition in lieu of his live testimony in their case-in-chief, I recommend that they carefully consider whether or not to do so.

Kawasaki's Motion In Limine To Limit The Use And To Exclude Certain Portions Of The Deposition Of Yasuhisa Okabe (docket no. 120) is denied.

### 2. Use of Mr. Macklin's deposition testimony

On March 6, 2013, Kawasaki also filed an unanticipated Motion In Limine To Limit The Use And To Exclude Certain Portions Of The Deposition Of Lars Macklin (docket no. 124). The Thompsons resist that motion.

#### a. Additional factual background

On August 12, 2012, Lars Macklin, the general manager of research and development testified in a deposition as the Rule 30(b)(6) designee of then-defendant Ohlins

Racing AB, the maker of the steering damper incorporated into the 2007 Ninja ZX–10R motorcycle and other steering dampers incorporated into other model years of that motorcycle. On February 13, 2013, in my Memorandum Opinion And Order Regarding Defendants' Motions For Summary Judgment (docket no. 99), *inter alia*, I granted Ohlins's November 27, 2011, Supplemental (Amended And Substituted) Motion For Summary Judgment (docket no. 71) in its entirety and dismissed Ohlins from this action. The Final Pretrial Order indicates that the Thompsons will present Mr. Macklin's testimony at trial, by videotaped deposition or live, on the "[s]ubject motorcycle and steering damping system." Final Pretrial Order at 5. The Final Pretrial Order also indicates that Kawasaki will present Mr. Macklin's testimony at trial live "regarding Ohlins's steering dampers and collaboration with Kawasaki to equip the Kawasaki Ninja ZX–10R with an adjustable steering damper as original equipment." Final Pretrial Order at 6.

### b. Arguments of the parties

As was the case with Mr. Okabe's deposition testimony, Kawasaki argues that the Thompsons intend to introduce almost the entirety of Mr. Macklin's videotaped deposition in a piecemeal fashion during their case-in-chief, even though Mr. Macklin will be present to testify live during Kawasaki's case-in-chief. Kawasaki argues that, unlike Mr. Okabe's deposition, Mr. Macklin's deposition cannot be introduced pursuant to Rule 32(a)(3) as the deposition of a Rule 30(b)(6) designee, because Ohlins is no longer a party to this litigation. For the same reason, Kawasaki argues that Mr. Macklin's deposition is hearsay not excepted by Rule 801(d)(2) as an admission of a party-opponent. Even if Mr. Macklin's deposition is somehow otherwise admissible, Kawasaki argues that it should nevertheless be excluded pursuant to Rules 403 and 611 of the Federal Rules of Evidence, because Mr. Macklin is available to testify live, making his deposition testimony wasteful and cumulative. Also, if Mr. Macklin is allowed to testify via deposition, Kawasaki argues that Rule 106 of the Federal Rules of Evidence would compel admission of evidence that Ohlins was a party to the suit, but that all claims against Ohlins were dismissed as groundless. Finally, Kawasaki argues that, at a minimum, I should exclude portions of Mr. Macklin's deposition testimony that lack relevance and that constitute inadmissible hearsay within hearsay. The portions of his deposition in question relate to development of an electronically controlled steering damper, which Kawasaki argues is irrelevant, because the subject motorcycle had a hydraulic, not electronic, steering damper, and references to third-party complaints about the insufficient damping provided by steering dampers on Ninja ZX–10R motorcycles.

In response, the Thompsons argue that the designated portions of Mr. Macklin's deposition testimony should be admissible in their case-in-chief. They argue that Rule 32(a)(4)(B) and (D) authorize them to offer the videotaped deposition of Mr. Macklin, because he resides and is located outside of the United States and they cannot procure his attendance by subpoena to present evidence in their case-in-chief, even if he may be available to testify live during Kawasaki's defense case—*i.e.*, after the Thompsons rest their case. They also argue that it would be Kawasaki's later live testimony from Mr. Macklin, not their initial deposition testimony from him, that would be potentially wasteful and cumulative. They also argue that using Mr. Macklin's deposition testimony does not open the door to evidence of their "manufacturing defect" claim or the fact that it was dismissed, because they have not designated any portions of Mr. Macklin's testimony that relate to the dismissed "manufacturing defect" claim. The Thompsons also contend that Mr. Macklin's testimony about electronic steering dampers and after-market steering damper kits is relevant to the "reasonable alternative safer design" issue. They argue that references to customer complaints in Mr. Macklin's deposition are also admissible for non-hearsay purposes and may be addressed by a limiting instruction.

### c. Analysis

The Thompsons do not dispute Kawasaki's argument that Mr. Macklin's deposition cannot be used in their case-in-chief as a Rule 30(b)(6) deposition, via Rule 32(a)(3), because they, as the offering parties, are not "ad-

verse" to Ohlins, where Ohlins has been dismissed, even if Mr. Macklin was, when deposed, Ohlins's Rule 30(b)(6) designee and Ohlins was then an adverse party. *See* FED. R.CIV.P. 32(a)(3). Thus, they have relied on a different part of Rule 32 in support of their argument that Mr. Macklin's deposition testimony is admissible in their case-in-chief, specifically, that he is "unavailable" to them at the time that they will present their case-in-chief.

The Thompsons are correct that Rule 32(a)(4) provides, in pertinent part, as follows:

> **(4) Unavailable Witness.** A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
>
>        *      *      *
>
> **(B)** that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;
>
>        *      *      *
>
> **(D)** that the party offering the deposition could not procure the witness's attendance by subpoena....

FED.R.CIV.P. 32(a)(4)(B) & (D). The Thompsons appear to be correct that, because Mr. Macklin lives in Sweden, he is outside the United States, that there is no hint that the Thompsons have procured his absence, and that they would be unable to procure his presence at trial by subpoena. *Id.* Nevertheless, that does not mean that they may necessarily use Mr. Macklin's deposition at trial in their case-in-chief, where Kawasaki represents that he will, nevertheless, be available to testify live at trial.

In *Truckstop.net, L.L.C. v. Sprint Communications Co., L.P.*, No. CV–04–561–S–BLW, 2010 WL 1248254 (D.Idaho March 23, 2010), the district court confronted circumstances somewhat similar to those presented here, in that one party had moved to prevent an opposing party from using deposition testimony in its case-in-chief, because the opposing party had also indicated that some of the witnesses to appear by deposition would or might also appear live. The court started from the premise that, "except for impeach-ment purposes, a party cannot introduce deposition testimony of a witness who will be present and give live testimony at trial." *Truckstop.net,* 2010 WL 1248254 at *1 (citing *Mazloum v. D.C. Metro. Police Dep't,* 248 F.R.D. 725, 727 (D.D.C.2008)). The court then observed, "[T]here is no rule or case law suggesting that a witness can be considered 'unavailable' under Rule 32(a)(4) for part of the trial, but available or potentially available for another part of the trial." *Id.* Therefore, the court concluded that the party seeking to use depositions must "either designate the witnesses as unavailable under Rule 32(a)(4), designate their deposition transcripts, and remove them from [its] live witness list, or withdraw their deposition designations," and if it chose "the former, the unavailable witnesses w[ould] not be allowed to testify [live] at any point during the trial." *Id.* The court recognized the possibility that the party identifying the witnesses as both by deposition and live could theoretically not designate the witnesses as unavailable and not make them available live to the moving party in its case-in-chief, forcing the moving party to designate and use at trial depositions of those witnesses, but then call them live itself in its case-in-chief without a subpoena. *Id.* The court found that such a process would be "inefficient and a waste of time," so it "strongly recommend[ed]" the opposing party plainly identify which witnesses would be unavailable and which would be available, in person, for both parties, if that was known. *Id.*

Unlike the movant in *Truckstop.net,* the Thompsons have cited authority that the time at which proximity and availability are determined is at the time that the deposition is offered, citing *Hartman v. United States,* 538 F.2d 1336, 1345 (8th Cir.1976). As I explained in *Niver,*

> Niver's last and broadest contention is that the witnesses in question are at a distance greater than 100 miles from the place of trial, so that their videotape depositions may be used in their entirety at trial pursuant to Rule 32(a)(3)(B) [now Rule 32(a)(4)(B) ].... Some time ago, the Eighth Circuit Court of Appeals expressly recognized that "[t]he proximity of the witness to the place of trial [for purposes of

Rule 32(a)(3)(B) ] is to be determined as of the time at which the deposition is offered," *i.e.*, at the time the witness is called at trial. *Hartman v. United States,* 538 F.2d 1336, 1345 (8th Cir.1976) (citing 8A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 2146, p. 458); *see also Starr v. J. Hacker Co., Inc.,* 688 F.2d 78, 81 (8th Cir.1982) (noting that deposition testimony of certain witnesses was properly admitted, because "[a]t no time has it been suggested that these witnesses were within 100 miles of the courthouse at the time of trial . . . .") (emphasis added). *Niver,* 430 F.Supp.2d at 866.

Although this authority supports the Thompsons' argument that the time at which the deposition is offered is relevant to the determinations of "proximity," under Rule 32(a)(4)(B), and, likewise, of "availability or unavailability," under Rule 32(a)(4)(D), I did not make a pretrial determination of the plaintiff's ability to use depositions in its case-in-chief in *Niver,* because I concluded that the plaintiff's argument was "premature." *Id.* I explained,

> Here, Travelers represents that the witnesses in question will all be present to testify at the courthouse when required; therefore, *until and unless such a witness who is under subpoena or whom Travelers has guaranteed will be present is absent when called, Niver cannot present videotaped deposition testimony in lieu of live testimony pursuant to Rule 32(a)(3)(B).* [*Hartman,* 538 F.2d at 1345]; *accord Young & Assocs. Pub. Relations, L.L.C.* [*v. Delta Air Lines, Inc.*], 216 F.R.D. [521] at 524 [ (D.Utah 2003) ] (recognizing "the universal preference for live testimony" and "adopt[ing] the rule that 'the deponent's locations should be examined . . . beyond the time of offering to include any point during presentation of proponent's case when a trial subpoena could have been served,'" quoting *United States v. IBM Corp.,* 90 F.R.D. 377, 383 (S.D.N.Y.1981), and holding that, "if the witnesses in question are made available as has been agreed for examination by the plaintiff in its case in chief, the Court will not allow deposition testimony in lieu of live testimony, even though at the time of depositions or trial the witness resides or is located at a great-

er distance than 100 miles from the courthouse").

*Niver,* 430 F.Supp.2d at 866.

Likewise, the Thompsons' assertions that they will not be able to obtain Mr. Macklin's live testimony, either because he is outside of the United States or because he is "unavailable" to them by subpoena, are "premature," because we will not know if these conditions obtain at the time that Mr. Macklin's deposition is offered until the deposition is, in fact, offered. *Id.* For the same reasons, Kawasaki's attempt to exclude use of Mr. Macklin's deposition, because he will be available live, may also be "premature." In this case, the Final Pretrial Order states,

> All parties are free to call any witness listed by an opposing party. A party listing a witness guarantees his or her presence at trial unless it is indicated otherwise on the witness list.

Final Pretrial Order at 8; *see Niver,* 430 F.Supp.2d at 866 (noting that I could not determine whether or not a witness that the opposing party had guaranteed would appear was unavailable until such time as the witness did not appear). Although Kawasaki identified Mr. Macklin as a witness that it "expects to be present at trial," *see id.* at 6, Kawasaki did not expressly disclaim any guarantee of his presence at trial, as the Thompsons did as to various witnesses that they identified as appearing either by deposition or live. I conclude that, pursuant to the Final Pretrial Order, Kawasaki has guaranteed the presence of Mr. Macklin to testify live, not simply when it wants to use him, but when he may be called in the Thompsons' case-in-chief. I cannot tell if Mr. Macklin is "available" to testify live until we discover at trial whether he is absent, notwithstanding Kawasaki's guarantee of his presence.

This does not mean that Mr. Macklin must necessarily be available, as guaranteed by Kawasaki, whenever the Thompsons want to call him. Rule 611 of the Federal Rules of Evidence does grant me the authority to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect

witnesses from harassment or undue embarrassment." FED.R.EVID. 611(a). In this case, where Mr. Macklin is traveling from abroad, and this trial is estimated to require two full weeks, I will strongly encourage, but I will not compel, the parties to try to reach agreement on taking Mr. Macklin, either as a plaintiffs' witness or as a defendants' witness, out of order, so that his direct and cross-examination by each party can be done efficiently. If the parties are unable to do so, I will make such orders concerning the time at which this witness will be presented as I determine are just and efficient to allow both parties to present their cases.

The conclusion that a challenge to use of Mr. Macklin's deposition at trial is premature likewise makes all of Kawasaki's challenges to the *content* of his deposition testimony premature. Thus, Kawasaki's March 6, 2013, Motion In Limine To Limit The Use And To Exclude Certain Portions Of The Deposition Of Lars Macklin (docket no. 124) is denied, in its entirety, as premature, because I cannot yet determine whether or not Mr. Macklin will be in proximity to the courthouse or subject to a subpoena when the Thompsons offer his deposition in lieu of live testimony.

## C. The Thompsons' Motion To Exclude Litigation Testing Evidence

As I noted above, the third post-deadline pretrial motion is the Thompsons' unanticipated February 28, 2013, Motion To Exclude Litigation Testing Of Kawasaki Experts Ron Robbins And Rick Oxton (docket no. 122). Kawasaki resists this motion to exclude what it describes as "demonstrative aids."

### 1. Additional factual background

The Thompsons assert, and Kawasaki does not dispute, that on February 5, 2013, well after the deadline for expert disclosures, after the deadline for the Thompsons' rebuttal expert disclosures, after the deadline for motions in limine, and only about six weeks before the scheduled trial date, the Thompsons received a letter from Kawasaki enclosing what Kawasaki described as "expert materials of Ron Robbins and Rick Oxton." *See* Plaintiffs' Motion To Exclude Litigation Testing (docket no. 122), Exhibit 2. The materials consisted of 29 CDs and DVDs, which included over 10,000 photographs, over an

hour of video footage of wobble and wheelie testing of exemplar motorcycles and steering dampers, and dozens of illustrations comparing various components of the test motorcycle with the subject motorcycle, but no actual test data from the instruments attached to the test motorcycles. Kawasaki has now listed some of the test videos, photographs, and illustrations as Defendants' Exhibits 1010–1020, 1022, 1025 and 1027–28.

### 2. Arguments of the parties

The Thompsons assert that their experts would need to review all of the data for the tests only disclosed on February 5, 2013, to fully understand the tests and test results, and that they can only guess how many pages of data may exist. The Thompsons also complain that they knew nothing of this litigation testing, or the resulting voluminous materials it generated, before February 5, 2013. The Thompsons argue that the belated disclosure and the lack of opportunity for their experts to review this material is sufficient ground for their belated motion to exclude it and for me, in fact, to exclude it. They complain that the belated "dump" of all of this information on them by Kawasaki is highly prejudicial to their trial preparations and the readiness of their experts to address it. They state that they have attempted to address the problem by scheduling the depositions of Mr. Robbins and Mr. Oxton on March 7, 2013, but that doing so only demonstrates the prejudice caused by the belated disclosures.

Kawasaki argues that this motion is an end-run around the scheduling order and reflects the Thompsons' poor judgment in not scheduling the depositions of Mr. Robbins and Mr. Oxton prior to the pertinent deadlines. Kawasaki contends that the Thompsons have had plenty of time to explore the bases for these experts' opinions, and that the expert witness disclosures of these witnesses' opinions have not changed. Kawasaki contends that the Thompsons' expert disclosures were neither as timely nor as complete as they now assert. Moreover, Kawasaki contends that it properly disclosed that the experts in question were preparing or had prepared various "demonstrative ex-

hibits" to assist the jury in understanding concepts and opinions addressed in their reports. Kawasaki contends that Mr. Robbins and Mr. Oxton even included with their reports an appendix with an index of their case file, which identified some of the photographs and raw video footage in question. Kawasaki represents that it does not expect to offer those demonstrative exhibits into evidence, but that it has nevertheless disclosed them as "exhibits" in an abundance of caution. Kawasaki also argues that the Thompsons have not suffered any prejudice, because there is no unfair surprise or delay from the disclosure of demonstrative aids.

### 3. Analysis

In *Lekkas v. Mitsubishi Motors Corp.*, No. 97 C 6070, 2005 WL 2989899 (N.D.Ill. Nov. 3, 2005), a case involving an alleged design defect in the Mitsubishi Montero, based on rollover propensity, the defendants, like Kawasaki here, disclosed videotapes prepared by one of their experts well after the deadline for disclosure of the defendants' experts and their reports. 2005 WL 2989899 at *1. Also like Kawasaki, the defendants in that case argued that the videotapes were timely disclosed, because illustrative exhibits are not technically due until trial exhibits are due. *Id.* The court rejected that argument:

> Defendants are mistaken. Demonstrative evidence which summarizes or supports an expert's opinions must be contained in the expert's report. *See Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n. 6 (7th Cir.1998) (noting that the category of "exhibits to be used as a summary of or support for the [expert's] opinions" "encompasses demonstrative evidence which summarizes or supports the expert's opinion."). Rule 26(a)'s disclosure requirements contain no exception for demonstrative evidence which summarizes or supports an expert's opinion.

*Lekkas*, 2005 WL 2989899 at *1. I agree that Kawasaki was also required to make a timely disclosure, in the experts' reports, of even "demonstrative evidence." *See* FED.R.CIV.P. 26(a)(2)(B)(iii) (stating that an expert's report "must contain ... any exhibits that will be used to summarize or support [the expert's opinions]"); *see also Robinson v. Missouri*

*Pac. R. Co.*, 16 F.3d 1083, 1089 n. 6 (10th Cir.1994) (noting that the amendment of Rule 26 that took effect December 1, 1993, required that "all parties and the court should possess full information well in advance of trial on any proposed expert testimony or demonstrative evidence," citing then Rule 26(a)(2)(B), which included the requirement that the expert report contain "any exhibits to be used as a summary of or support for the opinions"). Merely identifying some of the evidence and indicating that the experts had prepared or would prepare demonstrative exhibits is not enough.

The court in *Lekkas* then considered, pursuant to Rule 37(c)(1), whether the failure to disclose the videotapes was either justified or harmless, to determine whether or not to exclude the belatedly disclosed material, explaining,

> Four factors guide the trial court's determination of whether exclusion is appropriate: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir.2003). Sanctions for a discovery violation should be proportionate to the violation. *Salgado*, 150 F.3d at 740.

*Lekkas*, 2005 WL 2989899 at *2. The court concluded that the defendants' misunderstanding of the disclosure requirements was not a substantial justification, but that the failure to disclose was not willful or in bad faith; that the plaintiffs were "surprised," notwithstanding their deposition of the expert, because "[i]f the videos of [the expert's] demonstrations had been timely disclosed, Plaintiffs would have examined [the expert] about the contents of the videos, developed relevant cross-examination strategy, and likely prepared rebuttal expert testimony"; but nevertheless concluded that the violation was harmless and that excluding the videotapes was not necessary to prevent prejudice, because sufficient time, several months, remained for the plaintiffs to prepare to address the videotapes at trial. *Id.*

The situation here is different—both better and worse—in some respects. On the one hand, the defendants' belief that earlier disclosure of the "demonstrative" exhibits was not required was mistaken in both cases, but the parties in *Lekkas* had several months between the time of the belated disclosure and the trial date to remedy any prejudice, while the parties here had only about six weeks, and the materials at issue here are far more voluminous than they were in *Lekkas*. Here, the sheer volume of the belatedly disclosed material might give rise to inferences that the material is not merely "demonstrative," and that Kawasaki did not act in good faith in making the belated disclosure—a finding that the court declined to make in *Lekkas*. Specifically, Kawasaki disclosed the huge mass of materials without even a tentative identification of which items in the mass might ultimately be used as demonstrative exhibits, which might suggest an attempt to "hide the ball" from the Thompsons or to "bury" them with largely irrelevant material. Nevertheless, I am reluctant to find bad faith or any ill motive by Kawasaki where there is limited—and no controlling—authority on whether disclosure of "demonstrative" aids is required pursuant to Rule 26(a)(2)(B)(iii), even though its plain meaning so requires. While there has been limited obstructive conduct by Kawasaki, consisting of many frivolous objections in depositions, Kawasaki did not go farther by impermissibly instructing the witness not to answer, suggesting answers in their objections, or engaging in other "Rambo style" tactics. Indeed, counsel for both sides have acted with the utmost professionalism and high ethical standards in virtually all dealings with each other and all dealings with me.

On the other hand, the parties here have already taken steps to remedy the problem, specifically in light of the belated disclosure, because Kawasaki voluntarily made the experts in question available for depositions well after the deadline for expert discovery, and the Thompsons now have those depositions to clarify issues to which the "demonstrative" aids will relate. Also, Kawasaki's exhibit list indicates a substantial reduction in the February 5, 2013, materials that it actually intends to use at trial, even though the materials now identified as Defendants'

Exhibits 1010–1020, 1022, 1025 and 1027–28, still consist of 607 photographs and 13 minutes and 40 seconds of videotape in three segments. Pursuant to the Order Setting Trial (docket no. 36), the parties were required to exchange the exhibit lists before the Final Pretrial Conference, which occurred on February 21, 2013. Thus, Kawasaki's identification of the specific exhibits it intended to use occurred close on the heels of what the Thompsons call the "dump" of material on February 5, 2013, and almost a month before trial. Although I find that the circumstances, like those in *Lekkas*, may have prejudiced the Thompsons, I find that that prejudice was largely remedied, despite the shortness of time before trial, by the Thompsons taking, and Kawasaki allowing, the depositions of the experts whose opinions were implicated by the February 5, 2013, disclosures *after* and *specifically in light of* those disclosures. Therefore, like the court in *Lekkas*, I ultimately conclude that no sanctions on Kawasaki are appropriate. *Compare id.*

Therefore, the Thompsons' February 28, 2013, Motion To Exclude Litigation Testing Of Kawasaki Experts Ron Robbins And Rick Oxton (docket no. 122) is denied.

### III. CONCLUSION

Upon the foregoing, the post-deadline pretrial motions are resolved as follows:

1. Kawasaki's Motion In Limine To Limit The Use And To Exclude Certain Portions Of The Deposition Of Yasuhisa Okabe (docket no. 120) is **denied.**

2. Kawasaki's March 6, 2013, Motion In Limine To Limit The Use And To Exclude Certain Portions Of The Deposition Of Lars Macklin (docket no. 124) is **denied as premature,** because I cannot yet determine whether or not Mr. Macklin will be in proximity to the courthouse or subject to a subpoena when the Thompsons offer his deposition in lieu of live testimony.

3. The Thompsons' February 28, 2013, Motion To Exclude Litigation Testing Of Kawasaki Experts Ron Robbins And Rick Oxton (docket no. 122) is **denied.**

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about challenged evidence, this ruling shall be sealed until ten days after completion of the trial or notice of any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED.**